[Civ. No. 8287.   Third Dist.   Jan. 19, 1954.]

YOLANDA J. BRISTOL, Appellant, v. METROPOLITAN LIFE INSURANCE COMPANY (a Corporation), Respondent.

Lawrence Edwards and Charles H. Epperson for Appellant.

Knight, Boland & Riordan for Respondent.

VAN DYKE, P. J.—Appellant, as beneficiary under a policy of insurance issued by the respondent, brought this action to recover $5,000 payable to her under the terms of said policy in the event of the death of said insured "as the result, directly and independently of all other causes, of bodily injuries caused solely by external, violent, and accidental means."

This appeal is taken from the judgment that plaintiff take nothing.

■ The insured at the time of his death was, and had been for several years, a police officer of the city of Stockton and as such was subject to call to duty at all times. On the evening of March 3, 1949, while off duty, he attended wrestling matches held in the Civic Auditorium in Stockton. Several officers were in attendance, some of them on active duty and some of them as spectators. A commotion arose among the spectators which was described in terms varying from those indicating a minor disturbance to those indicating a riot. When this occurred the senior police officer on duty called upon all officers present to calm the disturbance. The insured responded and took part in restoring order. When the disturbance had been quieted the insured fell to the floor and died. Appellant contends that the death of the insured was due to ventricular fibrillation brought on by the excitement attendant upon the occurrences we have related and that, therefore, his death proximately resulted from bodily injuries caused solely by external, violent and accidental means within the meaning of those terms as used in the policy. The trial court upon this matter, which is the heart of the controversy, found that "the insured died . . . from natural causes and not as a result of any bodily injury effected or sustained by accidental means as defined by the provisions as to accidental death benefit contained in said policy of insurance." This was a finding of ultimate fact against appellant (*Horton* v. *Travelers Ins. Co.*, 45 Cal.App. 462 [187 P. 1070]; *Richards* v. *Travelers Ins. Co.*, 89 Cal. 170 [26 P. 762, 23 Am.St.Rep. 455]), whose burden it was to prove the converse. (*Rock* v. *Travelers Ins. Co.*, 172 Cal. 462, 464 [156 P. 1029, L.R.A. 1916E 1196].) The question presented for decision, therefore, is: Does the evidence compel a contrary finding?

It is without dispute herein that a commotion of considerable proportions did arise in the auditorium at the end of one of the wrestling matches during which a considerable number of people left their seats and attempted to follow one of the wrestlers to whose actions in the ring they had taken exception; that there was a general milling around of the crowd, with considerable tension and excitement; that the insured, responding to a call of duty, did take active part, along with his fellow officers, in calming this commotion; but there is no evidence that in doing so he was struck or shoved about or suffered anything in the nature of an assault upon his person. The testimony of a pathologist

concerning the cause of death may be summarized as follows: That the witness was a physician and surgeon and specialized in pathology; that when insured died the witness was the autopsy surgeon for the San Joaquin County Coroner and performed an autopsy on the insured's body; that he found the body to be that of an athletic, well-developed white male; that there was no evidence of trauma; that examination of the neck organs revealed no pathological findings; that the lungs contained some fluid; that the heart showed grossly some fatty changes and was slightly enlarged; that the coronary arteries were normal; that the stomach was filled with undigested food; that the abdomen, liver, spleen and other organs which could be visualized were normal; that the kidneys showed a mild pyelitis; that the skull and skull contents were grossly normal; that following the gross examination a toxicological examination of stomach contents, liver, kidneys and brain was negative as to presence of poison which might have been the cause of death; that microscopic examination of the various organs, including the heart, was negative, except that sections of the heart showed a fine scarring in the heart muscle, visible only under microscope; that after his examinations and investigations were completed he diagnosed the cause of death as ventricular fibrillation, with myocarditis. As to the myocarditis, the witness said that the microscopic scars he found were healed and might have occurred long before death. He said that even so such a heart would be more susceptible to ventricular fibrillation than a heart which had not been damaged in any way, although a sound heart could go into fibrillation with death ensuing. He explained that in ventricular fibrillation the ventricular muscles, instead of, as is normal, rhythmically contracting so as to force the blood out and through the circulatory system, lose their rhythm and act discordantly, with the result that the ventricle merely quivers, the blood ceases to flow and death ensues. The witness said further that this heart, and even a sound heart, might go into fibrillation and that in his opinion that was what had happened to the insured and was the cause of his death; but he said further that he arrived at this conclusion by a method of exclusion, that is, his toxicological analyses had excluded poison as a cause, he had found no other evidence in the body for the cause of death and that, assuming that the history of the exciting events we have related was correct, and that there was some disease of the heart, he put the two together, with the result that

he concluded the most logical cause of death .was ventricular fibrillation. He said that the slight dilatation of the heart with some pulmonary edema fitted the picture "which would occur with ventricular fibrillation." He gave it as his opinion that if the insured had had no excitement that evening he probably would not have died. On cross-examination the witness said it was possible that the attorney questioning him, just from the excitement of the trial might have a ventricular fibrillation and die; and that to be positive that a death had occurred from ventricular fibrillation a concurrent electrocardiagram would have to be available, or someone would have had to be listening with a stethoscope. The witness said that other forms of heart failure left symptoms which could be detected, but that in ventricular fibrillation there might be no such objective findings.

Depending upon the diagnosis of the pathologist that the insured died from ventricular fibrillation, induced by the excitement attendant upon the commotion which he aided in quelling, appellant argues that a death so caused occurs through bodily injuries caused by accidental means. Appellant contends that the occurrence arose in an unexpected and unforeseen manner and directly caused the injury so that not only was the death unforeseen and unexpected and in that sense accidental, but that the cause thereof, and the means whereby . the injury was suffered, were equally unexpected, unforeseen and fortuitous, and therefore accidental.

On this record we do not reach the problem posed by these contentions, for we have no finding in this record by the trier of fact that the decedent died from ventricular fibrillation, nor can it be said that such a finding is compelled by the facts presented to the trial judge. It was, as we have said, the burden of appellant, as plaintiff below, to prove that the death of the insured was the result of bodily injury effected through accidental means. And what was shown adds up to this, that, having excluded a number of causes of death, the pathologist concluded that death could have been caused by ventricular fibrillation induced by excitement and that, in his opinion, such had been the case. But this record is not one from which it can be said that the trial court was bound to find in accordance with the theory of appellant that the excitement brought on fibrillation and death.

The pathologist's testimony rested upon an assumption that deceased was excited by the events attendant upon the disturbance at the wrestling matches. It may be said the record

shows that a number of people were excited, but as to whether their excitement and the action which decedent, along with his fellow officers, was called upon to take, excited the decedent himself was a matter which the court could have determined adversely to appellant. Thus Thomas Monarch, a police officer who had been seated with decedent, and who also answered the call to duty, said that when the people started toward the dressing room doors through which the wrestler to whose actions they took exception had passed, he and the insured stationed themselves in front of the dressing room doors and stood there side by side; that it was not necessary for him to use his police club; that no arrests were made; that he did not see the insured use any force on anyone; that he did not see anyone lay a hand on the insured nor push or shove him around; that the people were not out of hand and that he saw no evidence of fear or excitement on the part of decedent when they were telling the people to go back to their seats. Another witness said the decedent did not look sick or excited; that he was not breathing hard and did not look like he had been working. This witness also said there was nothing unusual about the people gathering at the dressing room doorway and that there was a like disturbance at every match. Another witness said that after the people left the dressing room doorway the insured passed within four feet of her, that she observed his appearance and that it was normal and he showed no signs of being excited or out of breath; that a moment later she saw him on the floor.

From the foregoing, and from the admitted fact that the insured was a police officer of several years' experience and often attended these wrestling matches, the trier of fact could determine that the occurrence had not excited the decedent and that, therefore, the essential assumption underlying the opinion of the pathologist did not, in fact, exist.

The judgment is affirmed.

Peek, J., and Schottky, J., concurred.