**CONTINENTAL CASUALTY COM-
PANY, Appellant,**

v.

**Jessie Giddings THOMPSON, Appellee.**

**No. 20999.**

United States Court of Appeals
Ninth Circuit.

Nov. 21, 1966.

W. Paul Uhlmann, of Skeel, McKelvy, Henke, Evenson & Uhlmann, Seattle, Wash., for appellant.

Milton H. Soriano, of Soriano & Soriano, Seattle, Wash., for appellee.

Before HAMLIN, MERRILL and BROWNING, Circuit Judges.

MERRILL, Circuit Judge:

At about 5:35 P.M. on March 27, 1964, the Alaska earthquake and tidal wave dramatically involved the vessel Chena, a Liberty type freighter, then docked at the port of Valdez, Alaska.

As the ship's captain described events, the quake on shipboard was first felt as a series of tremendous shocks. The ship experienced a pounding and started to rise on a swell; she was lifted thirty to fifty feet while being swept inshore seventy to eighty feet over the top of the docks. There she experienced several

heavy rolls and came down on her bottom on top of the docks two or three times. Buildings on shore could be seen collapsing. Men could be seen below on the docks running out of collapsing buildings, falling into holes on the dock, which were then obliterated as the ship descended on them. The ship then fell off on its starboard or offshore side, throwing everything loose to that side. To the captain it did not seem possible that she could right herself. A tremendous mound of water, appearing to be several hundred feet high, then started to build up offshore. The ship fell into the side of this mound, which righted the ship, and then, building into a huge wave, lifted and carried her another three hundred or four hundred feet inshore, over the breakwater and small boat harbor. Here, embedded in rock, mud and debris of disintegrated docks and warehouses, the ship sustained further battering and pounding on the bottom by succeeding waves. The huge waves each served momentarily to float the ship and in time miraculously enabled it, by judicious use of its own power, to return to the outer harbor.

Ralph Thompson was third officer of the Chena. During or following the described events he went into a state of shock. The following morning he died. In the death certificate, injury was specified as "shock caused by earthquake," and the cause of death as "acute myocardial infarction."

As a member of the International Organization of Masters, Mates and Pilots, Thompson was enrolled under a group insurance policy issued by appellant providing $25,000 for accidental death. This diversity action was brought by appellee, Thompson's widow, to recover on the policy. It was brought in the Western District of Washington, appellee being a

resident of Monroe, Washington. At the close of plaintiff's case appellant's motion for a directed verdict was denied. Appellant elected to stand on its motion, and a $25,000 verdict was rendered in favor of appellee. Appellant's motions for judgment n. o. v. and for new trial were denied. Judgment upon the verdict was entered and this appeal was taken.

By the terms of the policy appellant agreed to pay benefits "for loss resulting directly and independently of all other causes from injury sustained." The policy provides: " 'Injury' wherever used in this Policy means bodily injury caused by accident." Appellant's position is that the facts do not support a conclusion that Thompson's death resulted "directly and independently of all other causes" from "bodily injury caused by accident."

The examining physician at the trial supported the statements of the death certificate that death resulted from myocardial infarction brought by shock, induced by the experience of the earthquake and tidal wave. Appellee supports the judgment by asserting that the evidence thus establishes that death resulted directly and independently of all other causes from myocardial infarction (the bodily injury) caused by earthquake (the accident).

Appellant contends that "bodily injury" must be given its common meaning; that mental shock due to excitement or mental disturbance in absence of any physical trauma does not constitute bodily injury. It points to the report to the Coast Guard made by the ship's captain in which the question "nature of injury" was answered "no injury; state of shock" and the cause of death was reported to be "coronary."

■■ Washington law does not support appellant's position, and compels affirmance.[1] In our judgment Pierce v.

---

1. In this diversity case we are of course bound to apply the law as would the Supreme Court of Washington. In the court below appellant asserted that the proper choice of law should be that of Washington, D.C., where the master policy under which Thompson was insured had been

delivered. The District Judge ruled that since it had not been shown that the law of Washington, D.C. differed from that of the State of Washington, the courts of the State would apply their own law. This is not disputed on appeal.

Pacific Mut. Life Ins. Co. of Calif., 7 Wash.2d 151, 109 P.2d 322 (1941), is squarely in point. That case involved a cerebral hemorrhage induced by fright or shock suffered following a threatened head-on automobile collision which was in fact avoided. The policy insured against "Bodily Injury sustained * * * solely through accidental means * * * independently and exclusively of all other causes * * * " 7 Wash.2d at 152, 109 P.2d at 323. On the present appeal, appellant makes two points, both of which were rejected by the Washington Supreme Court in *Pierce*.

First appellant contends that Thompson's state of mind prior to the earthquake was one of severe depression, and that this was an operative cause of the shock which resulted in death; thus the earthquake did not produce death "independently of all other causes." Similarly in *Pierce* there was evidence that the insured man had suffered from arteriosclerosis prior to the accident, which was thus a contributing cause of the injury. The Washington court ruled that the evidence was sufficient to support the finding that the accident was the sole proximate cause of injury:

> "We think the only reasonable interpretation to be placed upon this clause is to say that the injury must stand out as the predominant factor in the production of the result, and not that it must have been so virulent in character as necessarily and inevitably to have produced that result, regardless of all other conditions and circumstances. People differ so widely in health, vitality, and ability to resist disease and injury that what may mean death to one man would be comparatively harmless to another * * *."
> 7 Wash.2d at 165, 109 P.2d at 328.

Likewise in the case at bar we cannot say as a matter of law that the evidence of a prior condition of depression in Thompson compels a ruling that it was a contributing proximate cause of the shock which caused his death.

The *Pierce* court also posed the question "whether or not fright, or mental shock, unaccompanied by physical impact, is sufficient to constitute 'accidental means' within the purport of that term as used in the policies." 7 Wash.2d at 153, 109 P.2d at 323. The court clearly ruled that it was sufficient, and appellant does not contest that directly. Appellant seeks to avoid the *Pierce* holding by arguing that the *Pierce* court did not address itself specifically to the contention now made that injury brought about by fright or shock is mental injury, rather than "bodily injury," as that term is used in the policy. But it is clear from the facts of *Pierce* that this argument was implicitly rejected by that court. There as here an accident produced fright or shock, which caused an injury to the circulatory system of the insured. The Washington court was satisfied that the final bodily injury was sufficient for that term in the policy, and we can see no difference of substance on the facts of the present case.

Judgment affirmed.