### INSURANCE COMPANY OF NORTH AMERICA, Appellant,

v.

### Edna Talley ENGLISH, Appellee.

### No. 25187.

United States Court of Appeals
Fifth Circuit.

May 31, 1968.

---

W. F. Goodman, Jr., Jackson, Miss., William J. Threadgill, Columbus, Miss., for appellant; Threadgill, Hicks & Smith, Columbus, Miss., Watkins & Eager, Jackson, Miss., of counsel.

Harvey S. Buck, West Point, Miss., Raymond B. Dycus, Smithland, Ky., Hunter M. Gholson, Burgin & Gholson, Columbus, Miss., for appellee; Burgin & Gholson, Columbus, Miss., of counsel.

Before GEWIN and COLEMAN, Circuit Judges, and HUGHES, District Judge.

HUGHES, District Judge:

In this case Mrs. Edna Talley English, beneficiary of an insurance policy on the life of Elbert W. English recovered judgment in the district court against Insurance Company of North America, hereinafter called INA. We affirm.

The insurance contract in question was a group policy executed in Tennessee be-

tween Tennessee Valley Authority and INA and issued for employees of T.V.A. Premiums were paid by the employees through salary deductions.

Mr. English was employed by T.V.A. as a transmission substation operator in West Point, Mississippi, where he resided continuously from the date of his employment until his death. His duty was to control the flow of electric current at the substation by operating switches. In the performance of his work he was directed by a dispatcher in Alabama.

On the morning of October 23, 1962, English, while operating the switches failed to follow the proper switching sequence and erroneously opened a loaded circuit. Four hundred and sixty kilovolts of power arced into the air and grounded, producing a loud noise and a tremendous flash of light seen a distance of three miles. A substantial amount of equipment in the substation was damaged and pieces of insulation were thrown as far as fifty feet.

The dispatcher in Alabama, noticing the irregular surge of power, attempted to reach English by telephone. After approximately seven minutes English answered, appearing dazed but coherent. He was able to relay information, some, however, incorrect, and to follow additional instructions given by the dispatcher. A co-worker, alerted by telephone, arrived at the substation a few minutes later and checked the switches. English spoke to him and again, by telephone, to the dispatcher at which time he appeared coherent. While English was on the telephone the other operator heard a noise, and on returning he found English lying on the floor motionless except for a quiver of his lips. English was dead upon the arrival of the doctor and ambulance. The district judge found that "the only outward mark on his body was that his eyebrows were singed."

An autopsy resulted in the diagnosis that the cause of death was "acute coronary occlusion." The pathologist's report indicated "severe coronary athero-sclerosis" in the right coronary artery and other parts of the heart.

Four medical experts testified. The pathologist was of the opinion that the stress caused by the switching incident combined with the advanced atherosclerosis to precipitate formation of the blood clot in the coronary artery (thrombosis) and to cause the death of English. He characterized English's heart and artery condition as a "progressive disease," an "active disease, which was a constant threat to his life" and testified that "the amazing thing is that he lived as long as he did with his arteries in this condition." His conclusion was that "the severe pre-existing coronary disease as well as this emotional experience were both contributing causes of the man's death."

A cardiologist and internist testified that English died of a heart attack which was precipitated by emotional stress accompanying the incident of his switching error. He believed that English developed ventricular fibrillation, a condition of the heart in which the various muscles of the heart contract without co-ordination and, consequently, the heart becomes ineffective in doing its normal job of pushing the blood around in the system, causing the patient to die as a result of lack of circulation. On cross-examination, he testified that the blood clot found at the autopsy might have formed after English's death, "because when the heart stops and the blood stops flowing then often one finds clots in the arteries of the system." He conceded that English's arteries were afflicted with "a progressive disease which is a constant threat to his life and from which he could have died at any time, and that this disease was a contributing cause of his death."

The general practitioner who attended English at the substation testified that English was "scared to death," that he died of a heart attack precipitated by fright and that "if there had been no event to precipitate the heart attack the patient might well be living today." He

characterized the atherosclerosis as 'latent and dormant", meaning "not having symptoms for it."

Dr. Rosenblatt, a cardiologist, testified that, in his opinion, English's death was not caused by fright, that the atherosclerosis was extensive and progressive and not latent, and that it created a constant danger of thrombosis from which "he was prone to die suddenly at any time." He expressed amazement "that the man lived as long as he did, not why he died." It was his view that death was coincidentally related to his experience rather than causally related.

It is undisputed that English was unaware of his heart disease, that he had undergone two complete medical examinations during his TVA employment and that on both occasions his cardiovascular system was certified as normal. English was 55 years of age when he died.

The policy issued to English insured "against loss resulting directly and independently of all other causes from bodily injuries caused by accident."

On this appeal INA makes four contentions: (1) the policy is a Tennessee contract and must be construed in accordance with established Tennessee law, (2) death did not result directly and independently of all other causes from accident, (3) the policy requirement of bodily injury was not satisfied, (4) the court's charge was prejudicial to INA.

■ With reference to the first point, whether the contract should be construed in accordance with Tennessee law, it should be pointed out that the following two clauses of the contract refer to the law of the state of residence of the insured:

Any provision of this policy which, on its effective date, is in conflict with the statutes of the state in which the insured resides on such date, is hereby amended to conform to the minimum requirements of such statutes.

No action shall be brought after the expiration of three years (or the minimum time, if more than three years, permitted by the law of the state where the insured resides) after the time written proof of loss is required to be furnished.

As has been stated. English was continuously a resident of Mississippi from the effective date of the policy until his death.

The trial judge determined that Mississippi state law governed the construction of the policy and we adopt the portion of his opinion dealing with that question reported at 270 F.Supp. 713 at 715, 716.

■ As to the question of whether death was caused by accident "directly and independently of all other causes" the trial judge's opinion contains a well-documented review of Mississippi cases involving this question and we adopt the applicable portion of his opinion reported at 270 F.Supp. 713, 719, 728. We refer briefly to only two of the cited cases. The landmark decision is United States Fidelity and Guaranty Company v. Hood, 124 Miss. 548, 87 So. 115, 15 A.L.R. 605 (1921). The policy involved in *Hood* insured against "the effects resulting directly and exclusively of all other causes from bodily injury sustained * * * through accidental means." The insured, a man 56 years of age fell in his yard striking the back of his head on the frozen ground, which was heavily covered with ice. He was in bed at home and in the hospital, dying after fifteen days. It was the contention of the insurance company that death did not result "directly and exclusively of all other causes * * * through accidental means." The evidence revealed that the insured had suffered from high blood pressure and some kidney trouble, but an examination a few days before the accident found his condition better than it had been in years, and it was the doctor's opinion that while the accident operated upon the diseased condition his death was caused by the fall accompanied by uremia. The Supreme Court in af-

firming a judgment for the plaintiff declared at p. 119:

> "We think that, if the accident is the proximate cause of the death and sets in motion or starts a latent or dormant disease, and such disease merely contributes to the death after being so precipitated by the accident, it is not a proximate cause of the death nor a contributing cause within the meaning of the terms of the policy."

In the recent case of Peerless Insurance Company v. Myers et al., Miss. 192 So.2d 437 (1966), the policy provided for recovery for "loss resulting directly and independently of all other causes from accidental bodily injury." More than a year before her death the insured had suffered a heart attack, but since that time her heart condition was found to have been latent and dormant, not active, or virulent, and her general health was satisfactory. The day of her death she and two travelling companions became ill from carbon monoxide gas emitted from the exhaust of a taxicab in which they were riding with all windows closed. The trial court found that the carbon monoxide poisoning activated the latent heart condition of the insured, resulting in her death. Judgment for plaintiff was affirmed, the Supreme Court declaring at p. 439:

> "[R]ecovery may be had where the accidental injury aggravates, renders active, or sets in motion a latent or dormant pre-existing physical condition or disease, which in turn contributes to the disability or death for which recovery is sought, and where the accidental injury is a proximate cause of the resulting loss."

Reliance was placed on a number of Mississippi cases construing similar policy provisions, including *Hood,* supra.

It is our opinion that these cases state the Mississippi law and that the evidence supports the jury's finding that the causal relationship between the accident and Mr. English's death falls within the policy terms. There was adequate testimony that his heart condition was dormant and latent, and that death resulted directly and independently of all other causes from his accidentally opening the wrong circuit at the T.V.A. substation in West Point, Mississippi.

We come next to the question of whether the coverage provided by the policy against "loss resulting * * * from *bodily injuries* caused by accident" requires a showing of some physical trauma. It is INA's contention that, death resulting from shock, freight, or other psychic trauma is not a loss resulting from bodily injuries. Its position is that the term "bodily injuries" necessarily requires that some physical force be exerted on the body.

There is no Mississippi case directly in point. The trial court relied on Peerless Insurance Company v. Myers, supra, but in our opinion the carbon monoxide gas which intruded into the body of the insured in that case may readily be characterized as a physical force; the precipitating cause was a physical trauma as contrasted with a psychic trauma. Consequently, *Peerless* is not authority for holding that the facts in this case bring it within the policy provision. Nor do we find any Mississippi cases upholding the contention of INA that in order to satisfy the policy provision there must be a physical force exerted on the body of the insured.

A survey of cases outside of Mississippi reflects "comparatively few authorities in point", and they "are about evenly divided as to whether there may be recovery under an accident policy * * * when the insured's death or injury is caused by shock, fright or other psychic trauma."[1]

The case of Provident Life & Accident Insurance Co. v. Campbell, 18 Tenn.App. 452, 79 S.W.2d 292 (1934), is directly in point and supports the contention of INA. In that case the Tennessee court stated that " * * * a purely 'mental shock' due to excitement or mental dis-

---

1. 93 A.L.R.2d 580.

turbance * * * is not a bodily injury." However, other cases relied upon by Appellant may be distinguishable from the English case because of a difference in policy terms. In Bristol v. Metropolitan Life Ins., Co., 122, Cal. App.2d 631, 265 P.2d 552, 554 (1954); Pan American Life Ins. Co. v. Andrews, 161 Tex. 391, 340 S.W.2d 787, 93 A.L.R. 560 (1960); and Fries v. John Hancock Mutual Life Ins. So., 227 Or. 139, 360 P.2d 774 (1961), the policy insured against bodily injuries effected by *external, violent* and accidental means. In each of these opinions the court attached considerable significance to the use of the words "external" and "violent". These adjectives are absent from the policy provision here under consideration. Moreover, it is important to note that none of these cases lays down a general rule that psychically induces injury is not covered.

Equally in point as Provident Life & Accident Insurance Co. v. Campbell, supra, is Pierce v. Pacific Mutual Life Insurance Co., 7 Wash.2d 151, 109 P.2d 322 (1941). It represents the opposite view, shared by some courts that " * * * a death or injury resulting from shock, fright, or other psychic trauma may be within the coverage afforded by an accident policy * * * despite the absence of a physical impact between the insured's body and the force causing death or injury." [2]

In *Pierce,* supra, the insured, a man fifty-nine years of age, had been actively engaged in the practice of law for thirty-five years. On his way to the office early one morning the insured saw two cars approaching him, one on the wrong side of the road. He became badly frightened, believing that a collision was inevitable, and slammed on his brakes, his car proceeding at an angle for about fifteen or twenty feet. He had a "feeling of weakness in his right arm" and immediately lost consciousness. Although recovering sufficiently to drive to his office, he had difficulty in speaking and his face was distorted. A physician diagnosed his condition as a cerebral hemorrhage or stroke. For ten or fifteen years prior to the occasion in question the insured had suffered with arteriosclerosis and hypertension, and six years before the occasion he had a slight stroke. Since that time the insured had apparently been in good health and had been unaware of any effect of arteriosclerosis.

The court pointed out, that in negligence cases:

"It has been definitely settled in this jurisdiction * * * that damages are recoverable for personal physical injuries resulting from fright, even though there be no physical impact involving the person sustaining the fright, provided that the negligent act of the defendant was the proximate cause of the fright * * *" 109 P.2d at 326.

Concluding, the court said:

"Although the case at bar is an action upon a contract, and not one arising in tort, the principle of law above stated is equally applicable to both situations. The element of fright supports recovery, not because of the peculiar nature of the action brought, but because its connection with physical injury has been recognized." 109 P.2d at 326-327.

The Ninth Circuit in the case of Continental Casualty Co., v. Thompson, 369 F.2d 157 (1966), held that a ship officer's death from myocardial infraction after shock caused by an earthquake was within the terms of the policy even though there was no physical impact. In commenting on the *Pierce* case, supra, the court said:

"There as here an accident produced fright or shock, which caused an injury to the circulatory system of the insured. The Washington court was satisfied that the final bodily injury was sufficient for that term in the policy and we can see no difference of

2.   93 A.L.R.2d 579, 582.

substance on the facts of the present case." 369 F.2d at 159.

Since we have discovered no Mississippi cases in point and in view of the equal division among authorities from other jurisdictions, it becomes necessary to analyze the approach which this court should take in divining the Mississippi court's position on a question to which it has not yet addressed itself. Professor Moore states two principles upon which we rely. 1A J. Moore, Federal Practice ¶ 309[2] at 3326–30 (2d ed. 1965).

■ The first principle is that "an interpretation of local law by federal judges experienced therein should be given great weight." Moore's, supra at p. 3330. This principle has been relied upon by numerous courts, including the Supreme Court. In Bernhardt v. Polygraphic Co., 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199 (1956), that court, in following the trial judge's conclusion that under Vermont law an agreement to submit to arbitration could be revoked at any time before an award, wrote:

"Since the federal judge making these findings is from the Vermont bar, we give special weight to his statement of what the Vermont law is." 350 U.S. at 204, 76 S.Ct. at 277.

The trial judge in the case before us is an able Mississippi lawyer and judge, experienced in Mississippi law, and his opinion should be given great weight.

■ The second principle is that absent state cases in point, it becomes the duty of the court to arrive at the decision which reason dictates, with the faith that the state courts will arrive at the same decision.[3] In this connection we believe the position taken by the Washington court in *Pierce* and the Ninth Circuit in *Continental Casualty Co.*, to be the most reasonable view of the policy provision relating to bodily injury.

■ The phrase, "Loss resulting * * from *bodily injuries* caused by *accident*" logically should encompass *death* resulting from an *acute coronary occlusion* caused by a *sudden, violent, unexpected, electric discharge.* We have no difficulty in characterizing the internal injuries as the "bodily injuries" required by the policy terms.

Furthermore, it is no answer to contend, as does INA, that such an interpretation deprives the bodily injury requirement of meaning. The insurance company, having drawn up the provision, cannot pervert the natural and literal meaning of the terms by arguing that it would not have inserted useless terminology. The burden is on the company by well established rules of construction to avoid such problems through careful draftsmanship. If it wished to cover only loss resulting directly and independently of all other causes from bodily injuries caused by accident, *provided such bodily injuries are induced by an exertion of physical force on the body of the insured,* it should have inserted that proviso in the policy terms.

For all of the reasons stated we hold that the evidence supports the jury's finding that the insured's death comes within the policy provisions and that recovery on the policy should be allowed.

The only other point raised for our consideration is the contention of INA that the trial court's charge to the jury and the interrogatories submitted failed to state the applicable law and were prejudicial to INA. It is our opinion that viewing the charge as a whole it is not prejudicial and the trial court did not err in refusing a new trial.

The judgment is affirmed.

3. 1 A. J. Moore, Federal Practice at pp. 3326–3327; See also New England Mutual Life Insurance Co. v. Mitchell, 118 F.2d 414 (4th Cir. 1941).