**Winston Steve LUKER, Plaintiff,**

v.

**Thomas F. NELSON et al., Defendants.**

**No. 72 C 48.**

United States District Court,
N. D. Illinois, E. D.

March 29, 1972.

Richard Sikes, Taylor, Taylor & Sikes, Chicago, Ill., for plaintiff.

Clausen, Hirsh, Miller & Gorman, Chicago, Ill., for defendants Kleven and Zabel.

John Cadwalader Menk, Ronald Bishop, Chicago, Ill., for defendants Clark Oil & Refining Co.

## MEMORANDUM OPINION

WILL, District Judge.

The plaintiff, a young man who was charged in March of 1969 with the crimes of robbery and aggravated battery and held in state custody for nineteen days until a preliminary hearing was had in state court wherein it was determined that no probable cause existed to hold him on these charges, has

brought this Civil Rights action against the defendants with jurisdiction predicated upon 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. §§ 1983, 1985. The defendants Kleven and Zabel are police officers of the Village of Willowbrook, an Illinois municipal corporation. The defendant Clark Oil and Refining Company does business in Willowbrook and the defendant Nelson is allegedly its agent. Specifically, the plaintiff charges that the defendants each, by concerted action under color of state law, subjected and conspired to subject the plaintiff to the deprivation of his constitutionally guaranteed rights by falsely accusing him of the criminal charges above described and causing him to be arrested and confined without probable cause. Because of a prior and currently pending state suit of an allegedly similar nature, the defendants move to dismiss the complaint or to stay the proceedings herein.

THE STATE SUIT. To discuss the effect of the state suit on this federal action, a brief description and history of the state action is necessary. Surprisingly, neither the plaintiff nor the defendants have attached a copy of the complaint in the state suit, but we surmise from both plaintiff's and defendants' descriptions thereof that it does not allege any federal constitutional theory of suit but only alleges a common law suit for false arrest.

The state suit was filed in the Circuit Court of the 18th Judicial Circuit of Illinois, DuPage County, on March 22, 1971 under the name of Luker v. Clark Oil and Refining Company, Inc., et al., No. 71–748–G against, among others, all the parties named herein. On May 21, 1971, the presiding judge dismissed the defendants Kleven and Zabel and the Village of Willowbrook (not a defendant herein) from that suit on the ground that the plaintiff had failed to comply with an Illinois statute that requires notice to be given to a municipality within six months after the accrual of certain types of causes of action before that entity or its employees may be sued. *See*, Illinois Local Governmental and Governmental Employees Tort Immunity Act, Ill.Rev.Stat., Ch. 85, §§ 8–101—8–103 (discussed below in detail).

On June 15, 1971, plaintiff filed an amended complaint and the defendants again renewed their motions to dismiss. After a hearing and the filing of briefs, the presiding judge again dismissed the complaint as to the police officers and the Village of Willowbrook. That suit, as it currently stands, is apparently against only Clark Oil and its agents and is on the May 1972 trial calendar. The time for appealing the decision dismissing the police officers from the suit apparently will not begin to run until the suit is concluded in its entirety.

■ RES JUDICATA. The defendants Kleven and Zabel initially argue that this federal suit should be dismissed for lack of jurisdiction on the basis of the state court's ruling and the doctrine of res judicata. They contend that a final state court judgment is res judicata and binding upon a later federal suit where the parties and subject matter are the same notwithstanding the pendency of an appeal from the state court decision. We agree with these general propositions of law, but disagree with their proposed application in this case.

■ The general rule of the doctrine of res judicata stated above must be qualified by the caveat that the judgment entered must be on the merits. Of course, a determination of lack of jurisdiction will be deemed judicially conclusive in a subsequent suit on the same cause of action as to the precise issue of jurisdiction previously ruled upon. *See*, American Surety Company v. Baldwin, 287 U.S. 156, 166, 53 S.Ct. 98, 77 L.Ed. 231 (1932). Consistently, a dismissal for jurisdictional reasons by a state court is res judicata as to that jurisdictional issue in a subsequent federal suit when jurisdiction for the second suit is based upon diversity of citizenship and the federal court is sitting as another court of the state. Angel v. Bullington, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832 (1947).

■ A dismissal for lack of jurisdiction, however, will not preclude a second suit between the same parties unless the

same jurisdictional issue is again decisive. Thus, if the jurisdictional defects that lead to the first dismissal either are cured or otherwise lose their controlling force, a second suit is no longer barred and the merits of the suit may be reached. *See, e. g.,* Madden v. Perry, 264 F. 2d 169 (7th Cir. 1959), cert. denied, 360 U.S. 931, 79 S.Ct. 1450, 3 L.Ed.2d 1544 (1959).

■ A reading of the Circuit Court's order dismissing the defendants Kleven and Zabel clearly indicates that the dismissal was for lack of jurisdiction because of the plaintiff's failure to comply with the jurisdictional prerequisite of providing notice stated by Ill.Rev. Stat., Ch. 85, § 8–102. This ruling in the state false arrest suit, even assuming its finality which is open to question, would be res judicata if the plaintiff brought a second false arrest suit here with federal jurisdiction based solely upon diversity of citizenship. The plaintiff's instant suit, however, is based upon federal question jurisdiction under federal statutes and the court is not sitting, so far as this case is concerned, as an adjunct of the state court system. Accordingly, the state court's jurisdictional ruling is not binding upon this Court as res judicata and does not preclude this Court from reaching the merits of plaintiff's claims so long as he has satisfied the federal requisites for jurisdiction.

### FEDERAL JURISDICTION AND THE EFFECT THEREON OF STATE LAW.

The defendants Kleven and Zabel next argue that, even if the state jurisdictional decision is not binding upon this Court through the doctrine of res judicata, the same notice requirements of Ill.Rev.Stat., Ch. 85, § 8–102, should be deemed as a jurisdictional prerequisite for this federal cause of action and that the same result of dismissal as occurred in the state suit must be reached herein. To fully understand the basis of this argument, a brief review of the federal civil rights statutes involved herein must be made.

Section 1983 of Title 42 of the United States Code authorizes suit against any party acting under color of state law who subjects a person to the deprivation of any of his constitutionally guaranteed rights. No statute of limitations or any other requirements for suit, such as the notice provisions of the Illinois statutes, are set forth in § 1983. Section 1988 of the same title, however, states in pertinent part:

> The jurisdiction in civil . . . matters conferred on the district courts by the provisions of this chapter . . ., for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against the law, the common law, as modified and changed by the . . . statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause . . .

Finally, in this vein, the Rules of Decision Act, 28 U.S.C. § 1652, requires that the laws of the several states shall be regarded as rules of decision in civil actions in federal courts in cases where they apply except when Acts of Congress otherwise require.

In construing these three statutes and holding that the state statute of limitations of the state in which the district courts sits is binding in § 1983 suits in federal courts, our Court of Appeals has concluded that § 1988 was designed to supplement but not supplant the Rules of Decision Act and is applicable only when federal substantive law is not suitably adapted or sufficient to provide an appropriate remedy and the states have *re-*

*medial* provisions of law which, if applied, will help achieve the goals desired by the Civil Rights Act. Baker v. F. & F. Investment Company, 420 F.2d 1191, 1193–1197 (7th Cir. 1970), cert. denied, Universal Builders, Inc. v. Clark, 400 U.S. 821, 91 S.Ct. 40, 27 L.Ed.2d 49 (1970). After reviewing the legislative history behind the Rules of Decision Act and § 1988, the Court there concluded that the Rules of Decision Act requires the application of state law in federal question suits where Congress has not specifically legislated on the particular aspect of law covered by the state law and where no uniform federal common law is felt by the courts to be required, and if application of the state law does not deny or conflict with the very right to relief created by the federal law.

In applying these general conclusions with its review of the history of § 1983, the Court further concluded that the application of state statutes of limitations in § 1983 suits was proper and required under the Rules of Decision Act because (1) Congress had not provided any statute of limitations for such suits, (2) such application does not conflict with the existence of the rights created by § 1983, (3) a uniform common law in this field is not necessary, and (4) Congress, through its inaction, has accepted and adopted such application. The Court further concluded that § 1988 was not relevant to the issue before it at all because the application of state statutes of limitations in no way involved the adoption of state *remedial* rules used to supplement or overcome deficient federal rules of law.

The initial issues which must be resolved herein are whether the state notice requirements contained in Ill.Rev.Stat., Ch. 85, § 8–102, would be applied by Illinois courts to such actions and, if so, whether they are binding in federal § 1983 suits. Only if Illinois courts would apply the notice requirement in § 1983 actions would we reach the subsidiary question.

Based upon *F. & F. Investment Company* and its emphasis on the applicability of the Rules of Decision Act in fed-

eral question suits, these issues could be resolved only by determining whether a uniform federal common law is required in § 1983 suits and whether the application of the state law would deny or conflict with the relief created by the federal law. These subsidiary issues present a challenging review of federal law as it relates to the need for uniformity of its application and are not as easily resolved herein as they were in *F. & F. Investment Company*, where the state statutes involved were statutes of limitations which had often been accepted as binding in federal suits. Because of our resolution of the state law issues, discussed later, no need exists to answer these difficult questions.

■ We proceed then to the question of whether the Illinois courts would apply the notice of suit requirements of § 8–102 of the Illinois Governmental Tort Immunity Act to a federal civil rights action if brought in the state court. We note initially that an action based on §§ 1983 and 1985 could be brought in the state courts as state and federal courts have concurrent jurisdiction of suits of a civil nature arising under the Constitution and the laws of the United States, save in exceptional circumstances where the jurisdiction has been restricted by Congress to the federal courts. Grubb v. Public Utilities Commission, 281 U.S. 470, 476, 50 S.Ct. 374, 74 L.Ed. 972 (1930), and actions brought under §§ 1983 and 1985 are no exception to the general rule. Palma v. Powers, 295 F.Supp. 924 (N.D.Ill.1969).

Unfortunately, but not surprisingly, the defendants have cited and our research likewise has yielded no Illinois decision wherein the state courts have construed § 8–102 to be applicable to a § 1983 suit. With no state court decision to guide us, we are obligated to arrive at such decision as reason dictates, which we believe the state courts would also arrive at. *Cf.*, Insurance Company of North America v. English, 395 F.2d 854 (5th Cir. 1968). It is the Illinois Governmental Tort Immunity Act to which we must, therefore, turn to determine the scope of its coverage.

Ch. 85, §§ 8–102 and 8–103 state in pertinent part:

§ *8–102.* Within 6 months from the date that the injury or cause of action . . . was received or accrued, any person who is about to commence any civil action for damages on account of such injury against a local public entity, or against any of its employees whose act or omission committed while acting in the scope of his employment as such employee caused the injury, must personally serve in the Office of the Secretary or Clerk, as the case may be, for the entity against whom or against whose employee the action is contemplated a written statement, . . . giving the name of the person to whom the cause of action has accrued, the name and residence of the person injured, the date and about the hour of the accident, the place or location where the accident occurred, the general nature of the accident and the name and address of the attending physician
* * *

§ *8–103.* If the notice under Section 8—102 is not served as provided therein, any such civil action commenced against a local public entity, or against any of its employees whose act or omission committed while acting in the scope of his employment as such employee caused the injury, shall be dismissed and the person to whom such cause of injury accrued shall be forever barred from further suing.

On its face, the Local Governmental Tort Immunity Act appears to be directed at the garden variety type of torts, particularly because of its references to accidents and physicians. The history behind the Act suggests that the Illinois legislature never considered it to apply to § 1983 suits. The Act was adopted in 1965 immediately after the Illinois Supreme Court had eliminated the last vestige of the doctrine of governmental immunity, Harvey v. Clyde Park District, 32 Ill.2d 60, 203 N.E.2d 573 (1965), and was intended "to sal-

vage certain protections for public entities some of which had found themselves subject to suit for the first time." *Ritsema-Millgard, Inc.* v. *Michael J. Mc-Dermott & Company,* 295 F.Supp. 180 (N.D.Ill.1969). As the thrust of the Act was aimed towards protection of municipalities that recently had become amenable to suit and as such local units of government have not been and were not in 1965 amenable to suit under § 1983, Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), we have no doubt that the Illinois legislature intended the Governmental Tort Immunity Act to protect municipalities to a limited degree in suits based in common law tort but never intended the Act to cover § 1983 suits brought against municipal employees.

Indeed, the Illinois courts have never extended the protection of the Act beyond standard common law suits against municipalities and/or their employees acting in the course of their employment. The Illinois cases cited by the defendants and all those which we have located through our own research which have applied §§ 8–102 and 8–103 involved standard common law torts. *See, e. g.,* King v. Johnson, 47 Ill.2d 247, 265 N.E.2d 874 (1970); Hoffman v. Evans, 129 Ill.App.2d 439, 263 N.E.2d 140 (4th Dist. 1970); Williams v. City of Gibson, 129 Ill.App.2d 431, 263 N.E.2d 138 (4th Dist. 1970); Schear v. City of Highland Park, 104 Ill.App.2d 285, 244 N.E.2d 72 (2d Dist. 1968); Fannon v. City of Aurora, 106 Ill.App.2d 408, 245 N.E.2d 286 (2d Dist. 1969); Sappington v. Sparta Municipal Hospital District, 106 Ill.App.2d 255, 245 N.E.2d 262 (5th Dist. 1969); Brown v. Shook, Ill.App., 268 N.E.2d 883 (2d Dist. 1971). With but one exception, these cases were personal injury suits arising out of an accident or other forms of common law negligence. Even Fannon v. City of Aurora, *supra,* which involved the issue of false imprisonment (which is the issue involved in plaintiff's state court action against Clark Oil and Refining Company), also involved the equally important issue of the negligence of the police officers. Both of

these issues of Fannon, like the issues involved in all the other cited cases, dealt with standard common law torts which are completely distinct from and which have jurisprudential origins wholly apart from the plaintiff's federal statutory right of action for the protection of his constitutional rights which is not predicated on negligence nor seeks damages for a classical tort.

■■ Because the language and legislative history of the Governmental Tort Immunity Act indicate that the Illinois legislature intended to confine its scope to suits involving standard common law torts for which municipalities had just become liable in suit, because the Illinois courts have apparently never extended its reach beyond such torts, because the Act must be strictly construed against the public defendants, Reynolds v. City of Tuscola, 48 Ill.2d 339, 270 N.E.2d 415 (1971), and because the plaintiff's complaint which accuses the defendants of abusing powers conferred upon them by state law in order to violate his federal constitutional rights in no way resembles a tort action against a municipality for the negligence of its employees, we conclude that §§ 8–101—8–103 of the Act were not intended to be and are not applicable to civil rights actions brought pursuant to 42 U.S.C. §§ 1983 and 1985 in the state courts of Illinois or in federal courts sitting in Illinois and are not grounds for dismissing plaintiff's suit. *Accord*, Skrapits v. Skala, 314 F.Supp. 510 (N.D.Ill.1970); Klein v. Springborn, 327 F.Supp. 1289 (N.D.Ill.1971). *Contra*, Stone v. Rivkin, No. 71 C 2260 (N. D.Ill.1972); *see also*, Williams v. Townsend, 283 F.Supp. 580 (C.D.Cal.1968).

The defendants assert one final argument in this regard. They claim that then Chief Judge Campbell stated in *Ritsema-Millgard, supra,* that §§ 8–101—8–103 applies to all tort actions and that the Supreme Court stated in Monroe v. Pape, *supra,* that a § 1983 suit is a tort action. Their legal syllogism runs: (1) The Illinois Governmental Tort Immunity Act applies to all tort suits; (2) The plaintiff's federal civil rights action is a tort suit; (3) Therefore, the Illinois

Governmental Tort Immunity Act applies to plaintiff's civil rights action.

The error of this syllogism is twofold and lies in its fallacious premises. The initial error of the defendants is their belief that Judge Campbell's broad statements in *Ritsema-Millgard* apply to every conceivable form of tort action. That case involved an action against the City of Chicago for negligently maintaining a water main which flooded plaintiff's property causing damages. There is no indication that Judge Campbell ever considered the question of whether the Illinois legislature intended the Governmental Tort Immunity Act to cover § 1983 suits (even assuming that such suits may be classified as tort actions) in the suit before him which presented no such issue but which was a standard tort action based upon negligence. We do not believe that his general statements can properly be regarded as precedent for causes of action significantly different from that before him.

The second error of defendants' syllogism is that the Supreme Court did not state in Monroe v. Pape that a § 1983 suit is a tort action. In discussing the issue of whether § 1983 should be construed so as to require a showing of specific intent to deprive a person of a federal right before liability is created, the Supreme Court answered the posed issue in the negative by stating that § 1983 is not a criminal statute and that it "should be read against the background of tort liability that makes a man responsible for the natural consequences of his action." 365 U.S. at 187, 81 S.Ct. at 484. This statement, which has prompted the courts to analogize from and borrow concepts from the field of tort law in construing the reach of § 1983, is a far cry from a statement that the § 1983 statutory cause of action is a classical tort action. Although a § 1983 action perhaps could properly be labeled a quasi-tort action, the Supreme Court in Monroe v. Pape was not attempting to and did not categorize such a suit as falling rigidly within that, or any other, classification of the field of law. It is apparent from the language of § 1983, as well as the numerous decisions thereun-

der, that the statutory right and cause of action which it created is materially different both as to elements of liability and damages from common law tort although there are some analogies. As to liability, for example, there is no element of contributory negligence and the measure of damages is more flexible and involves intangibles not includable in tort damages.

Our conclusion, that the Illinois Legislature did not intend §§ 8–101—8–103 of the Illinois Governmental Tort Immunity Act to apply to suits brought under 42 U.S.C. § 1983, makes it unnecessary for us to reach the secondary issues of whether a uniform federal law is required under § 1983 in this regard or whether the applicability of a state notice requirement would deny or conflict with the relief created by federal law.

THE DOCTRINES OF COMITY AND JUDICIAL EFFICIENCY. All defendants move either to dismiss this suit or to stay its proceedings pending a final resolution of the earlier state action based upon the doctrine of comity and the need for judicial efficiency. Arguing that the plaintiff should not be allowed to try his suit piecemeal or to obtain two opportunities for success, the defendants base their motion upon the ground that both the federal and state courts have jurisdiction over the plaintiff's civil rights suit and that the plaintiff's previously filed state suit is capable of resolving all of the issues presented herein.

In support of their motion, the defendants cite numerous decisions which preclude a party from maintaining two suits on the same issue. *See, e. g.,* Neagle v. Brooks, 373 F.2d 40 (10th Cir. 1967); Holiday Inns of America, Inc. v. Holiday House, Incorporated, 279 F.Supp. 648 (W.D.Pa.1968); Moran v. Paine, Webber, Jackson & Curtis, 279 F.Supp. 573 (W.D.Pa.1967). As set forth hereinafter, we fully agree with the rationale of these cases but do not believe them relevant to this lawsuit.

Neagle v. Brooks was a diversity action brought to acquire title and posses-sion to real estate. The plaintiff had previously and unsuccessfully brought suit in the state court to acquire title to the identical piece of real estate. The district court and the Court of Appeals both concluded, correctly, that the first decision was res judicata in the federal suit. Accordingly, they granted summary judgment for the defendant. 373 F.2d at 44.

Holiday Inns of America, Inc. v. Holiday House, Incorporated was a declaratory judgment action brought by Holiday Inns seeking a judgment permitting the use of its registered trade name "Holiday Inn" by one of its licensees. At the time the plaintiff filed its federal action, a suit was pending in the state court by Holiday House against Holiday Inn's licensee seeking to enjoin the latter from using the name "Holiday Inn" by reason of its allegedly deceptive similarity to the name of Holiday House's nearby motel. Noting that the allowance of a declaratory judgment action is discretionary and being interested in the efficient administration of justice, the district court declined to exercise its discretion in favor of allowing the declaratory judgment suit because of the pendency of the state suit wherein *all* of the issues raised by the plaintiff in its federal action could be resolved. 279 F. Supp. at 649–650.

Finally, Moran v. Paine, Webber, Jackson & Curtis involved a suit by a customer of a stock brokerage firm against the firm for their alleged violation of the Securities Exchange Act of 1934, the Securities Act of 1933, and their common law obligations. The plaintiff therein had previously filed a state suit wherein, the district court believed, she had raised all her claims based upon her common law rights and her rights under the Securities Act of 1933 (over which the state and federal courts have concurrent jurisdiction). Because that suit had been concluded adversely to the plaintiff, the federal court applied the doctrine of res judicata, precluded her from relitigating those claims which had been decided in the state court, and allowed her only to present her claims under the 1934

Act (over which the federal courts have exclusive jurisdiction). 279 F.Supp. at 577–579.

These cases, and the other similar decisions cited by the defendants, are clearly distinguishable from the present case. *Neagle* and *Moran* each involved the situation where a litigant, after losing a suit in the state court, brought a second and identical suit in the federal court in an attempt to obtain the proverbial "second bite at the apple." And *Holiday Inns* was merely an instance where a federal court declined to exercise its jurisdiction because a pending state court action could resolve all the issues raised in the federal action.

If the relationship of the plaintiff's federal suit herein to the state suit were like those in the three cited cases, i. e., where the state suit either has or could resolve all the issues raised in the federal suit, we would apply the rationale of the cited cases and dismiss the plaintiff's complaint. The fact is, however, that the plaintiff's civil rights action herein, although possessing a common underlying factual genesis with the state tort suit for false arrest, presents both issues of fact and of law which the state court has not, cannot, and will not resolve. That the defendants contend that the plaintiff's two suits are identical and that the state courts could resolve all the issues presented herein reflects nothing less than their misunderstanding of the parameters of a suit brought pursuant to 42 U.S.C. § 1983.

 To comprehend the significant difference between the plaintiff's two suits, it becomes necessary to review briefly the Illinois law relating to the tort of false arrest or, as it is otherwise known, false imprisonment, and the federally created cause of action under 42 U.S.C. § 1983. The common law tort of false imprisonment is defined as an unlawful restraint of an individual's personal liberty or freedom of locomotion, Johnson v. Jackson, 43 Ill.App.2d 251, 193 N.E.2d 485 (1st Dist. 1963), and will lie against the persons actually procuring or participating in such restraint either directly or by virtue of another acting

in their stead. James v. Bank of Highland Park, 82 Ill.App.2d 118, 226 N.E.2d 404 (1st Dist. 1967); Green v. No. 35 Check Exchange, Inc., 77 Ill.App.2d 25, 222 N.E.2d 133 (1st Dist. 1963). Not only will the officer making an illegal arrest be liable therefor, but any person who by making an affidavit to support an arrest warrant, or otherwise, aids, advises, or abets the procurement of an arrest under a void process will also be liable in damages to the injured person, Develing v. Sheldon, 83 Ill. 390 (1876); Gill v. Lewin, 321 Ill.App. 633, 53 N.E.2d 336 (1st Dist. 1944). Even when the arrest itself is perfectly valid and legally sustainable, an unlawful detention following the arrest can be in and of itself false imprisonment. Hughes v. New York Central System, 20 Ill.App.2d 224, 155 N.E.2d 809 (1st Dist. 1959); City of Peoria v. Underwriter's at Lloyd's London, Unincor., 290 F.Supp. 890 (S.D.Ill. 1968); *See, generally,* 19 I.L.P. False Imprisonment § 1 et seq.; 35 C.J.S. False Imprisonment § 1 et seq.

As we understand Illinois law and the plaintiff's state suit, the plaintiff will need to prove therein that Clark Oil and Refining Company or its agents induced the police officers who arrested plaintiff to do so unlawfully. Because the police officers are no longer defendants in that suit by reason of their dismissal, no opportunity will be presented to the plaintiff to assert any liability against them.

 The cause of action under 42 U.S.C. § 1983 presents very different issues than those presented in the state tort action. The Civil Rights Act was enacted to protect individuals against invasions of federally guaranteed rights through the misuse or abuse of powers derived from the state. Monroe v. Pape, *supra;* Kletschka v. Driver, 411 F.2d 436 (2d Cir. 1969). It is designed to protect individuals from violations of their rights by those who possess badges of authority granted by the state. Wardrop v. Ross, 319 F.Supp. 1299 (W.D.Pa. 1970). An individual's right to be free from unlawful arrest is clearly a protected right which, if violated, may be

the basis for a § 1983 suit. Joseph v. Rowlen, 402 F.2d 367, 370 (7th Cir. 1968); Nesmith v. Alford, 318 F.2d 110, reh. denied, 319 F.2d 859 (5th Cir. 1963), cert. denied, Sullivan v. Nesmith, 375 U.S. 975, 84 S.Ct. 489, 11 L.Ed.2d 420 (1964); Sexton v. Gibbs, 327 F.Supp. 134 (N.D.Tex.1970), aff'd, 446 F.2d 904 (5th Cir. 1971); Antieu, Federal Civil Rights Acts § 46. This statute, as a general rule, does not provide any remedy against a private party unless his wrongful action was done under color of state law, Guedry v. Ford, 431 F.2d 660 (5th Cir. 1970), and authorizes no redress against purely private acts. Kennedy Park Homes Association v. City of Lackawanna, 318 F.Supp. 669 (W.D.N.Y. 1970), aff'd 436 F.2d 108 (2d Cir. 1970), cert. denied, 401 U.S. 1010, 91 S.Ct. 1256, 28 L.Ed.2d 546 (1971).

■ There exists, however, one well-established exception to the foregoing rule regarding private acts. Private persons who would not be operating under color of law so far as § 1983 is concerned if acting alone are within that statute's purview if they conspire with parties whose actions are deemed to be state action and consummate the constitutional deprivation that was the object of the conspiracy notwithstanding that § 1983 does not by its terms prohibit conspiracies as does 42 U.S.C. § 1985. Nesmith v. Alford, *supra;* Cohen v. Norris, 300 F. 2d 24 (9th Cir. 1962); Hoffman v. Halden, 268 F.2d 280 (9th Cir. 1959); Baldwin v. Morgan, 251 F.2d 780 (5th Cir. 1958); Gomez v. Florida State Employment Service, 417 F.2d 569 (5th Cir. 1969). *See also,* this Court's opinion in Huey v. Barloga, 277 F.Supp. 864, 873 (N.D.Ill.1967); 2 Emerson, Haber & Dorsen, Political and Civil Rights in the United States 1448 (3rd Ed. 1967); Antieu, *supra,* at §§ 34, 36. In this connection, the Supreme Court has held that any person acting in concert, i. e., as "a willful participant in joint activity," with parties whose conduct was deemed to be state action is chargeable with acting under color of law for purposes of 18 U.S.C. § 242, the criminal counterpart

to 42 U.S.C. § 1983, with both statutes having been construed similarly in their reach of acts deemed to be under color of state authority. United States v. Price, 383 U.S. 787, 794, n. 7, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966); Monroe v. Pape, *supra,* 365 U.S. at 185 (majority opinion), 212, 81 S.Ct. 473 (Frankfurter, J., dissenting).

In his § 1983 suit, the plaintiff will be required to prove as to the defendant police officers that they deprived him of his Fourth Amendment right to be free from unreasonable arrest and detention without probable cause. As to Clark Oil and Refining Company and its agent, the plaintiff must prove that they conspired with the police officers to achieve this alleged constitutional deprivation and succeeded in consummating the object of their conspiracy. Without this proof of conspiracy, Clark Oil and its agents, no matter what other actions they may have taken (such as procuring plaintiff's false arrest under a void process), cannot be deemed to have acted under color of state law so as to render them liable under § 1983.

■ This review of the law governing plaintiff's two suits makes apparent their significant differences. In his state tort suit, the plaintiff will have no opportunity to prove any element of his conspiracy theory against Clark Oil and its agents because such proof would be irrelevant to the legal issue presented in that suit of whether they procured his arrest and/or detention under a void process. In fact, the issue of the alleged illegality of their actions will be totally irrelevant to the state suit. Although the plaintiff might theoretically amend his state suit to include a § 1983 count against Clark Oil, the absence of the police defendants from that suit because of their successful motion to dismiss renders that § 1983 count meaningless and inappropriate against Clark Oil, which could not alone have acted in such a manner as to fall within the purview of § 1983. Thus, Clark Oil's motion to dismiss the complaint on the basis of the pending state action must be denied be-

cause no issue can be resolved therein which will effect its liability in plaintiff's federal suit.

The defendants Kleven and Zabel also move to dismiss on the same grounds. After being dismissed from the state suit, it is illogical for these defendants to suggest that the doctrine of comity precludes the plaintiff from maintaining this suit and that they should not be compelled to litigate this suit twice. Had these defendants remained as parties in the state suit, that action would have presented a perfect opportunity for the plaintiff to assert in a single court both his state tort claim and his federal § 1983 claim.

If these police officers had remained in that suit and all the issues presented by both claims been capable of resolution in one court, we would defer to the prior filed state suit and dismiss the plaintiff's complaint herein under the doctrines of comity and judicial efficiency. Because of the police officers' absence from the state suit, however, the issues presented by the § 1983 claim cannot be resolved therein. While the defendants Kleven and Zabel acted properly in seeking their dismissal from the state suit on jurisdictional grounds, it does not follow that, upon the basis of the doctrine of comity, they are entitled to be dismissed here where no jurisdictional defect exists. We conclude that the motion to dismiss of the defendants Kleven and Zabel on the grounds of comity and judicial efficiency must be denied because no issue affecting their liability will be decided by the state court suit to which they are not parties.

In a similar vein, Kleven and Zabel urge the Court to stay the proceedings of this action pending final resolution of the state proceedings. Citing cases, they argue that when (1) the state courts have acquired jurisdiction over the parties prior to the attachment of federal jurisdiction over the same parties and (2) the prior filed state suit is capable of resolving all the issues between the parties, the federal court should stay its proceedings while retaining jurisdiction over the suit until the state courts have completed their fact finding and review processes. *See, e. g.,* Vowinckel v. N. Clark & Sons, 162 F. 991 (N.D.Cal. 1908); Bateman v. South Carolina State Ports Authority, 298 F.Supp. 999 (D.S.C. 1969).

The resolution of the issue of staying the proceedings (or, as such action is otherwise known, abstaining while retaining jurisdiction over the suit) becomes obvious once we have determined that we should not dismiss the complaint because of the disparity of parties and issues between the two suits. Because the parties in the state court proceedings are *not* the same as involved herein and cannot be if the state court's dismissal of the police officers is correct, because the controlling issues that will be resolved in the state court will not and cannot be the same as will be resolved in this suit, and because no disruptive effect on the state court proceedings will occur irrespective of the ultimate resolution of this suit, no need is presented that would make appropriate the staying of these proceedings pending the final outcome of the state suit. *Cf., Bateman, supra,* 298 F.Supp. at 1004–1005. Accordingly, the motion of Kleven and Zabel to stay these proceedings is denied.

We do not mean to suggest by our conclusions herein that no issues of fact exist which overlap in the two suits. Obviously, when the same alleged occurrence gives rise to two different causes of action which, for one reason or another, cannot be resolved in one suit, some factual determinations made in one court may have a bearing upon the second suit. Similarly, any damages recovered in either action will have a bearing on the damages recoverable in the other. Our ruling is merely that the controlling issues of the two suits are sufficiently dissimilar that the doctrine of res judicata can have no bearing on them. We do not presently reach the issue of the applicability of the doctrine of collateral estoppel on any of the overlapping factual allegations of the two suits should the state proceedings ultimately terminate prior to the culmination of this suit.

Finally, Kleven and Zabel suggest that this Court is usurping power from the state courts and should not sit in review of the Circuit Court's dismissal of them from that suit. Such usurpation, they argue, violates the very foundation of the doctrine of comity. In response to this argument we need only reply that we agree wholeheartedly with their contention that we should not sit as a reviewing court taking an interlocutory appeal from the Circuit Court of DuPage County. It should be apparent from this opinion that we most certainly are not reviewing the propriety of the dismissal of the police officers from the state false arrest tort suit and pass no judgment whatsoever on that issue. The defendants' frequent references to this Court's acting as such a reviewing body are obviously erroneous.

An appropriate order will enter denying the motions of all defendants to dismiss the plaintiff's complaint and/or to stay the proceedings herein.