(No. 11383.—Judgment affirmed.)
S. D. CHILDS & Co., Appellant, *vs.* THE CITY OF CHICAGO
*et al.* Appellees.

*Opinion filed June 21, 1917—Rehearing denied October 5, 1917.*

1. INJUNCTION—*when making of public improvement cannot be enjoined.*   Damages resulting from a public improvement to an abutting proprietor, no part of whose land is physically taken, are not within the contemplation of the Eminent Domain act but the proprietor is remitted to his action at law, and he cannot enjoin the construction of the improvement because his property will suffer consequential damages which have not been ascertained in advance and paid.

2. SAME—*jurisdiction to enjoin public works should, be exercised with great caution.*   From the peculiar nature of works of public improvement and the serious injury that may result from any unwarranted interference with their construction the jurisdiction to enjoin such works is exercised with great caution, keeping constantly in view the damage that may result from improperly restraining their operation, and where there is a fair question as to the damages to complainant a court of equity should not interfere.

APPEAL from the Second Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. JOSEPH H. FITCH, Judge, presiding.

EDMUND S. CUMMINGS, and LEE D. MATHIAS, for appellant.

SAMUEL A. ETTELSON, (CHESTER E. CLEVELAND, and MORTON S. CRESSY, of counsel,) for appellees.

Mr. CHIEF JUSTICE CARTER delivered the opinion of the court:

The appellant corporation filed a bill in equity in the superior court of Cook county against the city of Chicago and its commissioner of public works to restrain them from constructing a bridge in Monroe street across the Chicago

river until damages occasioned to appellant's property by reason of such construction should first be ascertained and paid. A temporary writ of injunction was ordered, from which appellees prosecuted an appeal to the Appellate Court, where the order of the trial court was modified and the decree was reversed and the cause remanded. The appellee city thereafter changed its plans in some particulars so as to conform to the opinion of the Appellate Court. Appellant filed an amended and supplemental bill, and after issue joined thereon the cause was tried upon the merits and a decree entered dismissing the amended and supplemental bill for want of equity. An appeal was then taken directly to the Supreme Court on the ground that a freehold was involved, but on motion of appellees the case was transferred to the Appellate Court. The Appellate Court affirmed the decree of the superior court, certifying that the cause involved questions of law of such importance that it should be passed upon by this court. This appeal was thereafter perfected.

The cause was heard upon the amended and supplemental bill, the answer and replication thereto, and the evidence, oral and documentary, offered by the respective parties, each supported by affidavits.

Monroe street extends east and west in the city of Chicago and exists by virtue of a common law dedication which took place about seventy-five years ago, and has continuously been used since that time by the public as a street. It is intersected by the Chicago river, which is a navigable stream. The appellee city had made plans and let the contract for the building of a bridge across the river on said street. Appellant is the owner of a leasehold interest which expires April 30, 1919, in property abutting on the north side of Monroe street, adjacent to the river, the title to which property is in the estate of Lucius G. Fisher. The property faces about 70 feet on Monroe street and 99 feet on the river, being improved by an eight-story brick and

stone building.  A dock eight feet in width extends along
the river.  As constructed the building is adapted to the
established grade of Monroe street, the only entrance being
from Monroe street from the southwest corner of the build-
ing, the elevators and stairways being likewise located in
that corner.  The building is used by appellant and its sub-
tenants for manufacturing purposes and has been so used
since it was built, May 1, 1904.  In the construction of
the bridge the city is about to raise the grade of Monroe
street abutting appellant's premises 14 feet on the west and
11 feet on the east line of the same.  The bridge is to be
of the jack-knife or bascule kind.  The city is about to
build in the street a concrete pit 35 feet in depth, abutting
the west 40 feet of appellant's premises and extending prac-
tically the entire width of the street, in which it intends to
install and maintain motors, machinery and other devices
to operate and control the bridge.  The plans provide that
when the bridge is complete its steel arms or girders when
the bridge is closed will extend 12 feet above the surface
of the street at the curb, abutting the west 40 feet of ap-
pellant's premises, and when the bridge is open its arms or
girders extend upwards perpendicularly in front of appel-
lant's property to a height of about 80 feet and cut off
all access to or egress from the west 40 feet of the prem-
ises.  The plans and specifications of the bridge provide for
a watchman's house at the east end of the pit, which, when
completed, will extend over the street from curb to curb
and rest on two pillars, the floor being 16 feet above the
roadway.  There is 14 feet of sidewalk space between the
curb and the lot line on each side.  When the bridge is
being operated the watchman lowers the gates across the
roadway to warn the public.

Counsel for appellant contend (1) that where the fee in
a street is in the abutting owners a court of equity will
prevent by injunction the imposition of any additional bur-
den without just compensation, regardless of whether there

279 – 40

is a remedy at law; (2) that the city has no right to construct a bridge across the bed of the river at Monroe street until it has obtained, by condemnation, deed or conveyance from the owners of the bed of the river, the right to build such a bridge; (3) that the city has no right to build across the Chicago river a bridge which, when constructed, will not connect with any public highway, and that before it can build such a bridge equity requires that it obtain by condemnation or conveyance, or in other legal manner, a perpetual easement to connect such bridge with a public highway; (4) that it was the duty of the city, under the facts of this case, to have ascertained, by proper proceedings under the Eminent Domain act, the damages to appellant's property before doing such work and so damaging appellant.

When the motion was made by appellees to transfer this case from this court to the Appellate Court at the October term, 1916, of this court, suggestions in opposition were made by appellant to this motion, in which it was strenuously argued that this court should retain jurisdiction because a freehold was involved, in that the building of such a structure interfered with the fee of the street abutting this property, and also on the ground that a freehold was involved because the city could not build a bridge across the river without first condemning the fee in the bed of the river. This court granted the motion and transferred the cause, holding that a freehold was not involved. We think it is clear from the briefs filed herein that this decision was right, and to attempt to discuss the question or cite authorities here would only invite re-argument on a question long since settled by this court.

The principal question open for consideration on this hearing is whether the city, on the facts here stated, can be enjoined, because the complainant will suffer consequential damages from such improvement, from prosecuting a public work without first ascertaining and paying such dam-

ages. It is conceded in the briefs that no part of appellant's premises was sought to be taken and that no direct physical damage to its property was contemplated; that the damages, if any, to be sustained were entirely consequential. This court has frequently considered the question here involved. In *County of Mercer* v. *Wolff,* 237 Ill. 74, this court said (p. 76): "For such actual damages, though consequential only, as may be sustained by an owner of abutting land through the taking of adjoining premises for a public use a remedy is given, and the owner may have his compensation ascertained by a jury, as required by the constitution, in a common law action. But when no part of the land of an abutting owner is taken the constitution does not require the ascertainment and payment of his consequential damages before entry can be made upon adjoining property. Damages resulting to an abutting proprietor, no part of whose land is physically taken, are not within the contemplation of the Eminent Domain act, but he is remitted to his action at law for his damages,"—citing to the same effect *Penn Mutual Life Ins. Co.* v. *Heiss,* 141 Ill. 35, *Parker* v. *Catholic Bishop,* 146 id. 158, and *White* v. *West Side Elevated Railroad Co.* 154 id. 620. That has long been the settled law of this State. *Stetson* v. *Chicago and Evanston Railroad Co.* 75 Ill. 74, and cases cited; *Bradbury* v. *Vandalia Drainage District,* 236 id. 36; *Doane* v. *Lake Street Elevated Railroad Co.* 165 id. 510.

Counsel for appellant concede that these authorities so hold, but insist that the ruling of the late Judge Brewer in construing a constitution similar in wording to our own on this question, in *McElroy* v. *Kansas City,* 21 Fed. Rep. 257, held directly to the contrary, and that the reasoning there is sound and should be followed here. Thereafter, in considering a very similar question as to a public improvement on a street of the city of St. Louis, the United States Supreme Court, while Judge Brewer was a member of that court, in *Osborne* v. *Missouri Pacific Railway Co,* 147 U. S.

248, stated (p. 259) : "But where there is no direct taking of the estate itself, in whole or in part, and the injury complained of is the infliction of damage in respect to the complete enjoyment thereof, a court of equity must be satisfied that the threatened damage is substantial and the remedy at law in fact inadequate before restraint will be laid upon the progress of a public work, and if the case made discloses only a legal right to recover damages rather than to demand compensation the court will decline to interfere." The court then discusses and distinguishes the *McElroy case, supra,* and further says (p. 260) : "Assuming, as the circuit court did and as we prefer to do in disposing of the case upon this record, that if the complainant had sustained damage it had a cause of action, we nevertheless entirely agree that the bill was properly dismissed." It is clear, therefore, that the Federal circuit court's decision in the *McElroy case* cannot be considered even as persuasive in view of this later ruling of the Federal Supreme Court on the identical question before us. Moreover, the authorities in other jurisdictions cannot control in view of our decisions on this question.

Counsel for appellant insist that under the ruling of this court in *Meyer* v. *Village of Teutopolis,* 131 Ill. 552, the damage ought to be first ascertained before doing the work causing the damage. This very question has been passed upon by this court in *Parker* v. *Catholic Bishop, supra,* where the court stated that discretion is vested in the municipal authorities to determine, in the first instance, whether the property will or will not be damaged by the proposed public improvement. "If they, in the exercise of a reasonable discretion, find that property will be specially damaged by the proposed vacation or closing [of the public improvement] they should proceed to ascertain and pay the same, as was done in *Meyer* v. *Village of Teutopolis,* 131 Ill. 552. If, on the other hand, they determine that no injury will inure to the property by their proposed action,

they may, by ordinance passed in conformity with the statute, vacate or close such street or alley. Any other construction of the statute would require the municipality to summon into court every person whose property, however remotely, might be injured by the proposed vacation, and would render the ordinance void  *  *  *  if it should afterward turn out that a single owner whose property had been damaged had been omitted. The presumption is that the city council, being clothed with governmental functions, will discharge its duty as required by law, and that where property is damaged  *  *  *  they will ascertain and pay the damages as required. And this presumption will obtain until the property owner has, in an appropriate action, established his right to damages, and the property owner will, where no proceedings have been instituted by the municipality to ascertain his damages, be remitted to his remedy at law for recovery of the same."

Counsel for appellant in effect contend that under the pleadings and evidence in this case appellees have conceded that the property of the Fisher estate was damaged, and therefore the damage ought to be first ascertained under the ruling in the *Catholic Bishop case,* just cited. We do not think the conclusion can be reached from the pleadings or the proof that appellees concede that the Fisher estate will be damaged by this improvement. It is, however, contended that it will cost Childs & Co. some $37,500 to open a new entrance to the building and re-arrange the elevators and stairways, and that this must be done before the building can be of any use. Appellant further contends that it is financially unable to make such alterations; that it will be compelled to pay a rental of $13,000 per year; that tenants occupying the upper floors of the building who sublease from appellant will move out, and that appellant will likewise be compelled to vacate the premises and move its machinery; that the construction of said improvement will interrupt its business, and that for all these elements of

damage complainant will be unable to recover, because it says they are *dammum absque injuria*. Appellant argues that if such damages as are legally recoverable are first ascertained and paid it will not be compelled to suffer any of such losses because it will then be financially able to make all necessary alterations. The plain answer to this argument is that the courts can impose no conditions on the city that the law does not authorize, and the authorities in this State are clearly to the effect that the city is not required first to pay appellant's damages before proceeding with the proposed work .

Counsel for the appellant further argue that "a court of equity should enjoin the progress of public work if it is satisfied that the threatened damage is substantial and irreparable and the remedy at law inadequate." It needs no argument to show that if the value of the Fisher property, because of the improvement, will be enhanced rather than lessened there will be no irreparable damage. In any case, where there is a fair question about there being any damage a court of equity should not interfere by injunction. The general rule is, that from the peculiar nature of works of public improvement and the serious injury that may result from any unwarranted interference with their construction "the jurisdiction in restraint of such works is exercised with great caution, keeping constantly in view the damage that may result from improperly restraining their operation." (1 High on Injunctions,—4th ed.—sec. 615.) This court said in *Stetson* v. *Chicago and Evanston Railroad Co. supra,* on page 78: "Because a party would sustain consequential damages by the construction of a railroad constitutes no reason why the company may not enter upon its own lands, or any other lands in which he has no interest, to construct its road. The company would not be bound to stop and litigate the question of damages with everyone who may claim to be injured. Were this the law it would be found to be utterly impracticable to construct any rail-

road or other public improvement within any reasonable time." It is obvious that this reasoning applies with great force here. If the contention of appellant be sustained that equity should enjoin the construction of this work until all the damages to the abutting property owners, if any, are ascertained, by the same line of reasoning every kind of public improvement,—every elevation of railway tracks or construction of elevated railroads in Chicago,—would necessarily be restrained in equity until all questions of the damages of the abutting property owners were ascertained. The decisions of this court already cited are directly contrary to this reasoning and conclusion.

It is contended by appellant that the bridge abutments on the west end are to be built in the river in order not to obstruct any part of the premises on the west side for railroad purposes, and that to accomplish this it was necessary that the bridge be moved to the east, and that not only the river, but approximately 50 feet of the property on the east of the river, is to be used. Appellant contends that this is done for the purpose of allowing navigation and for the purposes of the railroad, and is done for private purposes without compensation to appellant. It is not improper to say in passing that we think this argument of appellant is without merit. If it is damaged by reason of the method of construction such damages can be recovered in an action of law.

The further contention of appellant that the title to the bed of the Chicago river is in the riparian owners to the middle thread of the stream, and that the bridge cannot be constructed across such stream without first condemning such riparian owners' rights in the premises, was passed upon adversely to appellant's contention at the time we transferred this case to the Appellate Court. As we understand the argument of counsel for appellant, the same line of reasoning whereby they attempt to prove that Monroe street cannot be extended by a bridge across the Chicago river

without first condemning the riparian owners' rights would be an argument that all the bridges across the south branch of the Chicago river on the streets within several blocks south of Monroe street have been improperly constructed by the public authorities without first obtaining the riparian rights of the adjacent property owners. We see no basis in the argument of and authorities cited by appellant to justify such conclusion as to Monroe street.

The further argument is made by appellant that the city has no right to construct a viaduct from the west bank of the river to Canal street, and that unless such viaduct is constructed the bridge cannot be used. The law will not permit the city to build a bridge which cannot be utilized. Appellees' brief concedes that the bridge cannot be used without a viaduct. Has the city a right to construct the viaduct? Monroe street, between the river and Canal street, was vacated in 1861 and conveyed to the Pittsburgh, Ft. Wayne and Chicago Railway Company for railway purposes. That company and its successors still continue to occupy the property for such purposes. The evidence, in our judgment, satisfactorily shows that the railway company, its lessees and successors, have conveyed to the Union Station Company the westerly 132 feet of a portion of Monroe street but have not conveyed the 27½ feet immediately west of the river; that the Pittsburgh, Ft. Wayne and Chicago Railway Company, the owner of the premises, executed a lease for a term of 999 years to the premises, which lease is now the property of the Pennsylvania Company. The Union Station Company is a corporation organized for the purpose of constructing a union station in Chicago. It was authorized by the city council to make use of certain streets, and as a consideration for such right agreed to construct a bridge across the river at Monroe street, connect it with Canal street by means of a viaduct, and procure a grant to the city of the right to extend Monroe street upon the viaduct from the bridge to Canal street.

The Union Station Company has changed its name to Chicago Union Station Company, and in accordance with the provisions of the ordinance agreed to build the viaduct and has given a bond to secure the performance of its agreement in this regard. This ordinance further provides that if the viaduct is not constructed by the station company the city may construct it, and the Pennsylvania Company, the lessee under the 999-year lease, is required to accept the provisions of this ordinance and has already done so. July 11, 1916, the Chicago Union Station Company granted to the city, in accordance with the ordinance, a perpetual easement to construct and use a viaduct from the bridge to Canal street, and under the provisions of the ordinance it also agreed to secure a similar grant from the owner of the fee and the lessees of the 27½-foot strip. The Pennsylvania Company, under its lease, which has about 950 years to run, must use this property in the same manner and for the same purposes as the Pittsburgh, Ft. Wayne and Chicago Railway Company is required to use it,—that is, for railway purposes. Building a union station is certainly using it for railway purposes. One of the conditions under which this station must be constructed is that a viaduct be built connecting the bridge with Canal street, as provided by the city ordinance, which provisions have been accepted by the lessee Pennsylvania Company. We are of the opinion that the Pennsylvania Company, under the provisions of its lease, has the right to authorize the construction of the viaduct from the river to Canal street, and that if it does not perform its obligation in that regard the city, under the ordinance, has the right to construct the viaduct. This being so, we can reach no other conclusion than that this objection of appellant is without merit.

We find no reversible error in the record. The judgment of the Appellate Court will therefore be affirmed.

*Judgment affirmed.*