MELVIN E. STREETER *et al.*, Plaintiffs-Appellants, *v.* THE COUNTY OF WINNEBAGO, Defendant-Appellee.

Second District (2nd Division)   No. 75-434

Opinion filed December 3, 1976.

Robert G. Coplan, of Connolly, Oliver, Goddard, Coplan & Close, of Rockford, for appellants.

Philip G. Reinhard, State's Attorney, of Rockford (James M. Hess, Assistant State's Attorney, of counsel), for appellee.

Mr. JUSTICE RECHENMACHER delivered the opinion of the court:

This is an appeal from the judgment of the circuit court of Winnebago County dismissing the plaintiffs' complaint for money damages resulting from the vacating of a county road abutting the plaintiffs' property.

The property in question is located at the corner of a State highway known as FAS 1044 (also called Harrison Avenue) which runs east and west, and Bell School Road (a county highway also known as County Highway No. 26), which runs north and south and dead-ends at Harrison Avenue. The property extends about 1130 feet north of Harrison Avenue on the east side of Bell School Road and is improved with several buildings, including a restaurant and service station. It is divided into two parcels, one of which has approximately 375 feet of frontage on Bell School Road, the other adjacent parcel having about 759 feet of frontage.

On November 9, 1972, the County Board of Winnebago County passed a resolution vacating the south 560 feet of Bell School Road (Highway No. 26), which is the portion of the road running north from Harrison Avenue along the plaintiffs' property, so that the road then ran west from the northerly part of plaintiffs' property and then south and entered Harrison Avenue at a point some 1440 feet west of where it originally connected with Harrison Avenue. On October 11, 1974, the plaintiffs filed a complaint against the County alleging that as to each of the two tracts the County had deprived the plaintiffs of access to Bell School Road by vacating the south 560 feet of that road; that they were deprived "totally of access from Harrison Avenue and totally of direct access from Bell School Road," which reduced the value of their property; that no compensation had been paid for said damages and that the plaintiffs were entitled to damages in the amount (for both tracts) of $300,000. In a second count the plaintiffs alleged that the vacating of the 560 feet of Bell School Road diminished the value of their property by cutting off their access to Bell School Road and Harrison Avenue, and that this amounted to a taking of private property for public use without just compensation,

in violation of the Illinois Constitution, whereby they are entitled to compensation in the amount of $300,000.

The County moved to dismiss the complaint for failure to state a cause of action based on the following grounds:

(1) That the Tort Immunity Act (Ill. Rev. Stat. 1973, ch. 85, par. 8—102) (officially the Local Governmental and ' Governmental Employees Tort Immunity Act) provides that notice must be given within one year of a cause of action accruing against a local public entity and in this case no notice was given within one year as required by that Act;

(2) That under the Tort Immunity Act (ch. 85, par. 2—103), a local public entity is not liable for an injury caused by adopting or failing to adopt an enactment;

(3) That the County Board relocated the part of the road vacated and hence there is no ground for action against the Board because, while section 5—109 of the Highway Code (Ill. Rev. Stat. 1973, ch. 121, par. 5—109) provides that compensation shall be paid for damages caused by vacation of a county highway, section 5—110 of that statute states that the provisions of section 5—109 "shall not apply where the county board has ordered a highway or part thereof to be vacated permanently to be reconstructed and dedicated in a new location," which is what occurred in this case.

The trial court granted the County's motion and dismissed the complaint. No testimony was heard.

In this appeal the plaintiffs contend that the suit in question is not subject to the notice provisions of section 8—102 of the Tort Immunity Act. It is the plaintiffs' theory that that Act and the notice provision thereof refers only to *torts* and this is intended to mean cases of personal injury arising out of an accident or the other usual bases of common law negligence. Plaintiffs admit there are no Illinois cases so holding but cite the United States District Court case of *Luker v. Nelson* (N.D. Ill. 1972), 341 F. Supp. 111, as indicating that the notice provisions were intended to apply only to the usual common law torts arising out of fortuitous events where the circumstances require prompt notice. As pointed out by the County in its reply brief, the Federal District Court's remarks were mostly dicta and what was actually decided in the *Luker* case was simply that the notice provisions of the Tort Immunity Act did not apply to a civil rights case under section 1983 of the United States Code.

■■ While we have found cases involving other circumstances than the common garden variety of tort actions for negligence arising out of accidental injury, where the notice provisions of the Act have been applicable (false arrest—*Ramos v. Armstrong* (1972), 8 Ill. App. 3d 503; wrongful discharge—*Kepper v. La Salle-Peru Township School District*

*No. 120* (1972), 7 Ill. App. 3d 138; malicious prosecution—*Dear v. Locke* (1970), 128 Ill. App. 2d 356; wrongful demolition of a building—*Hecko v. City of Chicago* (1975), 25 Ill. App. 3d 572), we are not persuaded that the circumstances here are subject to the provisions of the Tort Immunity Act. It is true the notice provision of the Act speaks of an "injury or cause of action" but the title of the Act clearly indicates it is intended to apply to cases arising in one context or another under the law of torts. Thus if no tort is involved the notice provisions and the limitations of the Tort Immunity Act would not apply.

■■ In the case before us, while the complaint asked for "damages" it also prayed for "compensation" and invoked that section of the Illinois Constitution guaranteeing that private property shall not be taken for public use without just compensation. The action, as conceived in these terms, is therefore analogous to a claim for compensation in an eminent domain proceeding rather than a tort for which damages are recoverable due to a breach of duty. The plaintiffs do not contend in their brief that any wrongful act was done—merely that they were injured in their property rights by the exercise of the County's prerogative to vacate the road and since they were injured for a public purpose they are entitled to compensation. There is no element of tort here. No duty was owed to the plaintiffs which was breached by the change in the road and it is not alleged that the change was arbitrary or unnecessary. The plaintiffs merely analogize the vacation of the road to many other cases of loss of access under eminent domain proceedings and claim compensation for the results of the County's action, without in any way challenging the County's right to take such action. (See *Department of Public Works & Buildings v. Wilson & Co., Inc.* (1975), 62 Ill. 2d 131, and *No. 3 Oakland Suburban Heights, Inc. v. H. W. Bekermeier* (1968), 94 Ill. App. 2d 67; also *McCue v. Brown* (1974), 22 Ill. App. 3d 236.) Under these circumstances we do not feel the notice provisions of the Tort Immunity Act should be held to bar the plaintiffs' suit. It would seem to us very technical to bar the plaintiffs' action for lack of notice under the circumstances of this case in view of the fact that the County Board was acting deliberately and according to law when the act complained of occurred and certainly had no need of notice as to its own resolution vacating the road. While the delay of almost two years in filing the complaint may give rise to some speculation as to the economic effect it produced, it gave the County no difficulty in defending the matter. The nature of the circumstances was not such as to make prompt notice a material element in this case and we do not think the action should be barred for lack of such notice.

■■ Likewise, we do not consider section 2—103 of the Tort Immunity Act, which provides that a public entity "is not liable for any injury caused

by adopting or failing to adopt an enactment or by failing to enforce any law," to be applicable to the circumstances of this case. As we view it, the question is one of compensation to an abutting landowner for loss of access. Whatever may be the considerations of public policy relating to this question we do not believe it is governed by the principles of tort law.

However, the County invokes a further statutory provision, being section 5—110 of the Highway Code (Ill. Rev. Stat. 1973, ch. 121, par. 5—110). This must be read in conjunction with section 5—109 of the same Code which provides:

> "When property is damaged by the vacation of a county highway or part of it, the damage shall be ascertained and paid as provided by law."

Section 5—110 states:

> "The provisions of Section 5—109 shall not apply where the county board has ordered a highway or part thereof to be vacated permanently to be reconstructed and dedicated in a new location."

The County argues that since the vacated portion of the county road in question was merely relocated by swinging it westward 1440 feet to meet Harrison Avenue at that point, the provisions of section 5—109 and section 5—110 taken together, do not provide for any damages to be paid for the relocation of the road. However, even though we agree that these two sections of the Highway Code annul each other as to compensation, this does not dispose of the plaintiffs' claim. The plaintiffs contend that if section 5—110 is to be construed as preventing or precluding any compensation for actual injury or loss suffered by the abutting landowner resulting from such vacation and change of location, then such construction is in violation of the constitutional provision that "private property shall not be taken or damaged for public use without just compensation as provided by law" (Ill. Const. 1970, art. I, §15).

■■ The County in this case has not, of course, exercised its power of eminent domain in any degree whatsoever. No land of the plaintiffs has been taken and their land still has access to the county road in question. There is not, therefore, in this case an actual "damage to the remainder" by denial or change of access due to condemnation and the taking of a part, however small, of the plaintiffs' land. Nevertheless, the principle behind the decisions in these cases such as *Department of Public Works & Buildings v. Wilson & Co., Inc.* (1975), 62 Ill. 2d 131, is that abutting property owners' right of ingress or egress is a valuable property right and the taking of any such right must be compensated for. This is a doctrine of the common law and is completely independent of the eminent domain statute. In *S. D. Childs & Co. v. City of Chicago* (1917), 279 Ill. 623, 627, our Supreme Court cited with approval from *County of Mercer v. Wolff*, 237 Ill. 74, 76, as follows:

" 'For such actual damages, though consequential only, as may be sustained by an owner of abutting land through the taking of adjoining premises for a public use a remedy is given, and the owner may have his compensation ascertained by a jury, as required by the constitution, in a common law action. * * * Damages resulting to an abutting proprietor, no part of whose land is physically taken, are not within the contemplation of the Eminent Domain act, but he is remitted to his action at law for his damages,'—citing to the same effect *Penn Mutual Life Ins. Co. v. Heiss*, 141 Ill. 35, *Parker v. Catholic Bishop*, 146 id. 158, and *White v. West Side Elevated Railroad Co*. 154 id. 620. That has long been the settled law of this State."

Thus even if it is conceded that section 5—110 of the Highway Code nullifies that portion of section 5—109 which acknowledges the right to such damages as may be ascertained and paid as provided by law for the vacating of a county road, this does not, in our opinion, operate to deprive the owner of a common law remedy, but where section 5—110 applies, merely removes the statutory obligation for payment of such damage as therein provided.

The plaintiffs have cited extensively from the recent Supreme Court opinion in *Department of Public Works & Buildings v. Wilson & Co., Inc.* (1975), 62 Ill. 2d 131 (affirming this court in 22 Ill. App. 3d 302) which affirmed the plaintiffs' position taken here, that is that the landowner is entitled to compensation where access is materially impaired, even though substitute access by way of a frontage road is afforded. The Supreme Court said:

"The decisions thus indicate that the 'right of access' with which we are here concerned is a private property right inherent in ownership of real estate abutting a highway. When such access is taken or *materially* impaired by action of the State the property owner is entitled to compensation." (62 Ill. 2d 131, 140-41.) (Emphasis added.)

This broad general language, we think, transcends the limits of eminent domain law and recognizes the right to compensation at common law for loss of or material impairment of access by an abutting owner. However, we have deliberately emphasized in the above passage the word "materially" because the *Wilson* case points out very clearly that a mere change in the mode of access is not compensable if it does not result in a *material* impairment. In the *Wilson* case the appeal arose from an adverse ruling on the State's motion *in limine* to prohibit the introduction of evidence to determine whether or not a material impairment of access had occurred with respect to the property in question. The court said:

"The testimony which was adduced on this question together with

the physical facts relating to access before and after the taking lead to the inevitable conclusion that the partial taking which occurred here did result in a material impairment of existing direct access rights within the purview of the prior decisions of this court referred to earlier. Accordingly, the trial court properly permitted the jury to consider loss of direct access to Roosevelt Road and the substitution of the frontage road as factors bearing on the extent of damages to the remainder. We agree with the trial and appellate courts that the award in this case was based on compensable elements of damage." 62 Ill. 2d 131, 145.

■■ However, in the earlier cases of *Ryan v. Rosenstone* (1960), 20 Ill. 2d 79, and *Department of Public Works & Buildings v. Mabee* (1961), 22 Ill. 2d 202, the court held that the change in the nature of the access was not a material impairment of the landowners' right of access. It is thus evident that the impairment of access is not *ipso facto* compensable but an abutting landowner has a common law, if not statutory, right to a trial on the merits to determine whether a loss or impairment of access is in fact compensable. Accordingly, we hold in the case before us that the trial court erred in dismissing the complaint on the basis of the motion as set forth therein. For purposes of deciding the motion to dismiss, the allegation as to loss or impairment of access must be assumed to be true and in our opinion neither the notice provision nor the immunity section (section 2—103) of the Tort Immunity Act bar this action. Nor is it consistent with constitutional and common law principles to hold it barred by virtue of the quoted provision of the Highway Code, section 5—110. The plaintiffs are entitled to a trial on the merits as to whether they have in fact suffered a material loss or impairment of their right of direct access to Bell School Road and access to Harrison Avenue.

An issue raised by this court at the oral argument is whether in fact the plaintiffs ever *had* access to Harrison Avenue, which could have been affected by vacation of a part of Bell School Road. This question will no doubt be determined at a trial on the merits. As the question of materiality of the loss or impairment of access will naturally arise at a trial on the merits we take the liberty of referring the trial court to the comment of the Supreme Court in the *Wilson* case (page 141) regarding trial procedure on this issue.

The judgment of the circuit court of Winnebago County is reversed and remanded with instructions to reinstate the complaint.

Reversed and remanded with instructions.

SEIDENFELD and GUILD, JJ., concur.