Orrin R. JOHNSON, Plaintiff,

v.

John PANIZZO, Joseph Morrow, D. McDonald, Larry B. Knott, James Ryan, J. Boucher, Officer Rezak, City of Joliet, A Municipal Corporation, J.J. Brace and H.R. Siminski, Defendants.

No. 86 C 9246.

United States District Court,
N.D. Illinois, E.D.

April 15, 1987.

Donald X. Murphy, Chicago, Ill., for plaintiff.

Thomas A. Thanas, City of Joliet, Joliet, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Orrin R. Johnson brings this action for relief under 42 U.S.C. §§ 1981, 1983, 1985 and 1988 (1982) and 28 U.S.C. § 1343 (1982) against five police officers of

the City of Joliet, Illinois ("City"), two police supervisors for Joliet and against the City itself. Currently before this Court are motions to dismiss and for sanctions under Rule 11. For the reasons noted below, we deny the motion to dismiss and the motion for sanctions.

### Facts [1]

Johnson's complaint alleges that on November 27, 1981, he was arrested and placed into custody by seven police officers of the City of Joliet, Illinois: John Panizzo, Joseph Morrow, D. McDonald, Larry B. Knott, James Ryan, J. Boucher and an "Officer Rezak." [2] Johnson alleges that at the time of his arrest he was not engaged in the commission of a crime, but was "in a state of mental confusion," and that there was no probable cause for the officers to arrest him. While Johnson was in custody and handcuffed, he was severely beaten and physically abused by the officers. The officers, maliciously, in a concerted action punched, kicked and beat Johnson about the head while Johnson was handcuffed at a time when there was no need to use such force to restrain Johnson. Because of this beating, Johnson has suffered great pain and anguish and will continue to suffer such pain in the future. He has also suffered a loss of earnings as a result of this beating and has been forced to pay for medical care and expects to pay for medical care in the future also as a result of this beating.

Officer Knott, without probable cause to do so, charged Johnson with a felony. As a result of this unfounded charge, Johnson was incarcerated in the Will County Jail for an excessive period before he was given a hearing. The charge against Johnson was subsequently dropped without prosecution because there was no probable cause to arrest Johnson or detain him in the first place.

Johnson alleges that all of these actions were taken pursuant to a conspiracy among the officers to deprive him of his civil rights on the basis of his race which is black.

Johnson also alleges that the City of Joliet has fostered a policy of encouraging police brutality against blacks and the use of excessive force in general. The City encouraged the use of excessive force by ignoring and refusing to enforce citizen complaints of police brutality before the Police Board of commissioners. Johnson also cites the killing of a black, Ronald Sherrod, by another Joliet police officer, not a defendant in this case, as an example of the previous use of excessive force against blacks by the City of Joliet police department. As an example of the police department's encouragement of the use of excessive force with which to effectuate arrests, Johnson alleges that the City maintained a training center for its police where the police were specifically trained in the use of black-jacks and numchucks.

Johnson also brings this action against two City of Joliet police supervisors who Johnson alleges were co-conspirators in Johnson's beating and who personally took part in the beating.

### I. *Motion to Dismiss*

Defendants raise two issues which they contend preclude Johnson's action altogether and, in the alternative, contend that we must dismiss the claim against the City for failure to meet the pleading standards for a cause of action under § 1983 against a municipality as articulated in *Monell v. New York City Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) and its progeny. First,

---

1. For purposes of a motion to dismiss for failure to state a claim upon which relief can be granted under Fed.R.Civ.P. 12(b)(6), the Court takes all the well-pleaded allegations of the complaint as true and views them, as well as all reasonable inferences therefrom, in the light most favorable to the plaintiff. *Ellsworth v. City of Racine,* 774 F.2d 182, 184 (7th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986). Furthermore, the motion to dismiss should only be granted if it appears beyond a doubt that plaintiff can prove no set of facts which would entitle him to relief. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2233, 81 L.Ed.2d 59 (1984); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

2. Officer Rezak was originally a party to this action but has since been dismissed.

defendants contend that Johnson's action is precluded under the doctrine or claim preclusion, or res judicata, and is also precluded under the appropriate statute of limitations. We must outright reject defendants' assertion of a statute of limitations defense because Johnson's complaint puts him within the class of persons entitled to a grace period for filing a civil rights action under *Anton v. Lehpamer*, 787 F.2d 1141 (7th Cir.1986). Defendants do not deny this but apparently wish to preserve the argument should the Supreme Court rule differently than *Anton*. Finally, defendants contend that in the event Johnson is not precluded from bringing this suit under the first two theories, then we should at least dismiss the claims against the City under *Monell*.

## A. Claim Preclusion [3]

■ On November 28, 1983, Johnson filed a lawsuit in Will County Circuit Court against the City of Joliet, Joseph Morrow, Officer D. McDonald, Officer Rezak, Officer L. Knott and James Ryan. All of these defendants are defendants in the present suit. In addition, four individuals have been included in this suit who were not included in the Will County suit: John Panizzo, J. Boucher, H.R. Siminski and J.J. Brace.[4] *See Johnson v. City of Joliet*, No. 83 L 806. The Will County lawsuit was dismissed in an order charged to the defendant pursuant to Illinois Supreme Court Rule 271.[5] The order of dismissal indicated that the lawsuit was dismissed pursuant to Ill.Rev.Stat. ch. 85, ¶ 8–103 for Johnson's failure to comply with the notice of injury requirement of Ill.Rev.Stat. ch. 85, ¶ 8–102.[6] This dismissal applied not only to Johnson's state law claims, but his claims under the federal civil rights statutes. This was clearly improper, as the notice requirements of ¶ 8–102 do not apply to the federal civil rights claims. *Cain v. City of Chicago*, 619 F.Supp. 1228 (N.D.Ill.1985); *Luker v. Nelson*, 341 F.Supp. 111 (N.D.Ill.

---

3. Although affirmative defenses are usually raised in the answer and decided in a motion for summary judgment, it is within the trial court's discretion to rule on the affirmative defense of res judicata by way of a Fed.R.Civ.P. 12(b)(6) motion. *Frier v. City of Vandalia, Ill.*, 770 F.2d 699 (7th Cir.1985); *Lambert v. Conrad*, 536 F.2d 1183, 1186 (7th Cir.1976); 5 C. Wright and A. Miller, *Federal Practice and Procedure* § 1360 at 634 (1969). Johnson has not objected to our resolving the claim preclusion issue on a motion to dismiss. Therefore, because the defendants have provided us with certified copies of the state court documents, there is no reason we should not decide this issue now.

4. Although Johnson has filed his suit against "H.R. Siminski" and "J.J. Brace" no attorney has filed an appearance on behalf of anyone with these names. Instead, an appearance has been filed on behalf of a "James J. Grace" and a "R. Sicinski." If James J. Grace and R. Sicinski are the proper parties and not "H.R. Siminski" and "J.J. Brace," then plaintiff will need to file an amended complaint to name the proper parties.

5. Rule 271 provides:
When the court rules upon a motion other than in the course of trial, the attorney for the prevailing party shall prepare and present to the court the order or judgment to be entered, unless the court directs otherwise.

6. These statutes provided the following:
8–102 Notice of Injury
Within 1 year from the date that the injury or cause of action referred to in Sections 8–101, 8–102, and 8–103, was received or accrued, any person who is about to commence any civil action for damages on account of such injury against a local public entity, or against any of its employees whose act or omission committed whiled action in the scope of his employment as such employee caused the injury, must serve, either by personal service or by registered or certified mail, return receipt requested, a written notice on the Secretary or Clerk, as the case may be, for the entity against whom or against whose employee the action is contemplated a written statement signed y himself, his agent or attorney, giving in substance the following information: the name of the person to whom the cause of action has accrued, the name and residence of the person injured, the date and about the hour of the accident, the place or location where the accident occurred, the general nature of the accident, the name and address of the attending physician, if any, and the name and address of the treating hospital or hospitals, if any. (Repealed by P.A. 84–1431, Art. 1, § 3, effective November 25, 1986).
8–103 Effect of Failure to Serve Notice
If the notice under Section 8–102 is not served as provided therein, any such civil action commenced against a local public entity, or against any of its employees whose act or omission committed while acting in the scope of his employment as such employee caused the injury, shall be dismissed and the person to whom such cause of injury accrued shall be forever barred from further suing.

1972); *Tomas v. Universal Health Services,* 145 Ill.App.3d 663, 99 Ill.Dec. 451, 495 N.E.2d 1186 (1st Dist.1986); *Firestone v. Fritz,* 119 Ill.App.3d 685, 75 Ill.Dec. 83, 456 N.E.2d 904 (2d Dist.1983); *Streeter v. County of Winnebago,* 44 Ill.App.3d 392, 2 Ill.Dec. 928, 357 N.E.2d 1371 (2d Dist.1976). The correctness of the Will County order is not, however, an issue now.

Defendants contend, and Johnson does not dispute, that the Will County lawsuit arose out of the same factual basis as the present suit, Johnson's arrest and subsequent beating in Joliet in November of 1983. Additionally, except for four new defendants, Johnson has sued the same parties. Thus, defendants argue, Johnson is barred under the doctrine of claim preclusion (or res judicata) from bringing this present suit.

Because we are to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the states from which they emerged, *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985), we must look to Illinois law to determine if Johnson's claims are barred by claim preclusion. Illinois follows the traditional res judicata rule:

> [A] final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies, and, as to them, constitutes an absolute bar to a subsequent action involving the same claim, demand or cause of action.... The doctrine of *res judicata* in all cases where the second suit is upon the same cause of action and between the same parties or their privies as the former action, extends not only to the questions actually litigated and decided, but to all grounds of recovery or defense which might have been presented.

*Kirk v. Board of Education,* 811 F.2d 347, 352 (7th Cir.1987) (citing *People v. Kidd,* 398 Ill. 405, 75 N.E.2d 851, 853–54 (1947)). Thus, all claims that could have been presented by Johnson against the parties or their privies in the Will County suit will be barred in this suit *if* the judgment rendered in the Will County suit was a final judgment.

### 1. Parties or Privies to Parties

Defendants argue that the judgment entered in the Will County suit was a final judgment entered in a suit against all of the same parties and their privies as the present suit. Johnson disagrees. Johnson argues that the four new parties in this case were not parties nor privies to the parties in the Will County suit and the judgment in the Will County suit was not a final judgment sufficient to invoke claim preclusion in this case as to the four new defendants.

In this suit, Johnson has included as defendants four individuals who were not included in the Will County suit: John Panizzo, J. Boucher, H.R. Siminski and J.J. Brace. Whether or not the judgment entered in the Will County suit was a final judgment under Illinois law, if these four individuals were not privies to the Will County defendants, then there can be no bar to Johnson's present suit against these individuals now. Defendant contends that under Illinois law Johnson cannot now sue the new defendants because there is a master and servant relationship between the officers and the City of Joliet. *Toepper v. Cooker,* 150 Ill.App.3d 206, 103 Ill.Dec. 617, 501 N.E.2d 934 (2d Dist.1986). Defendants misunderstand and thus misapply this rule in the current case. The purpose underlying such a rule is to prevent an employer or employee from double liability for the same act. If an employee commits injuries against a third party and the third party sues the employer under the theory of respondeat superior and the court holds that there is no liability because there was no negligence on the part of the employee, the third party cannot come back and sue the employee and try to show the employee was indeed negligent. However, if the judgment for the employer is rendered because the court found the employee was acting outside of the scope of his job, then the third party is not prevented from coming back and suing the employee individually. Or, if the injured party sued the em-

ployer for injuries the employer *personally* inflicted upon the party, the injured party is not precluded from bringing suit against the employee for the injuries the employee personally inflicted.

Thus, the rule has evolved that judgment for either the master or servant, arising out of an action predicated upon the alleged negligence of the servant, bars a subsequent suit against the other for the same claim of negligence where the agency relationship is not in question. *Toepper* at 208, 103 Ill.Dec. at 618, 501 N.E.2d at 935. A review of the complaint in the Will County suit fails to show that the City was being sued for the acts of these individuals, Panizzo, Boucher, Siminski and Brace. If Johnson were suing these four new defendants in their official capacities, then the previous suit against the City, if a final judgment, would bar this suit. The Illinois Supreme Court has held that a previous suit against a city barred a subsequent suit against a city official, but only in his official capacity. *City of Elmhurst v. Kegerreis*, 392 Ill. 195, 64 N.E.2d 450 (1946). The privity required to invoke claim preclusion against nominally different parties is generally lacking between the representative and individual capacities of the same individual defendant. *Meding v. Hurd*, 607 F.Supp. 1088, 1101 (D.Del.1985) (applying the principle under Delaware law in a civil rights action). Therefore, whether or not the Will County judgment entered in the Will County lawsuit was a final judgment under Illinois law, that suit cannot bar Johnson's present suit against these four individuals in their personal ca-

pacity. Of course, because we find below that the Will County judgment was not a final judgment under Illinois law, Johnson can also sue these individuals in their official capacity.

## 2. Was the Final Judgment in the Will County Suit a Final Judgment Under Illinois Law?

■ Defendants contend that the order issued in the Will County lawsuit was a final judgment under Illinois law and therefore must be given preclusive effect in the present lawsuit. Under Illinois law only a final order is on the merits and thus entitled to preclusive effect in all subsequent lawsuits. *See People v. Kidd*, 398 Ill. 405, 75 N.E.2d 851 (1947); *Schmitt v. Woods*, 73 Ill.App.3d 498, 29 Ill.Dec. 498, 392 N.E.2d 55 (5th Dist.1979). Thus, the Will County lawsuit would only be entitled to preclusive effect in this suit if it was a final adjudication on the merits. Illinois Supreme Court Rule 273 sets forth the Illinois rule as to final judgments:

Unless the order of dismissal or a statute of this State otherwise specifies, an involuntary dismissal of an action, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join an indispensable party, operates as an adjudication upon the merits.

Ill.Rev.Stat. ch. 110A, ¶ 273 (1985).

■ Johnson argues that the judgment entered in the Will County suit[7] was not a final judgment, but rather was a dismissal for lack of jurisdiction citing *Luker v. Nelson*, 341 F.Supp. 111 (N.D.Ill.1972).[8] In

---

**7.** The docket entry on the court's record did not indicate the reason for the dismissal:

March 20 Case called forhearing [sic] on defendant's motion to dismiss. Plaintiff twice called appears not. Mr. Thanas appears for Defendant. Due proof of notice appears of court record. Motion allowed. Cause is dismissed. Order charged to the defendant pursuant to Supreme Court Rule 271.

The order entered by the defendants pursuant to Rule 273 is more explicit:

This matter coming on Defendants City of Joliet, Morrow, McDonald, Knott, and Ryan's Motion to Dismiss Plaintiff's Complaint, notice having been given to Plaintiff's attorney and his attorney not appearing for hearing on said motion;

It is ordered that Plaintiff's Complaint is dismissed with prejudice as to the aforementioned Defendants in accordance with I.R.S. ch. 85, sec. 8–103 for Plaintiff's failure to comply with the notice of injury requirement of I.R.S. ch. 85, sec. 8–102.

(Defendant's Exhibit D).

**8.** Ironically, *Luker* is most often cited for the proposition of law that the Will County judge obviously misunderstood, that is, that a dismissal for failure to provide statutory notice to the municipality under Ill.Rev.Stat. ch. 85 ¶ 8–102 does not prevent a plaintiff from proceeding with his claims under the federal civil rights statutes. *See, e.g., Tomas v. Universal Health Services, Inc.*, 145 Ill.App.3d 663, 99 Ill.Dec. 451,

*Luker* the court held that an Illinois state court's dismissal of a lawsuit under ¶ 8–102 was a dismissal for lack of jurisdiction and thus did not preclude a later suit in federal court which raised the plaintiff's civil rights claims. Defendants argue that Johnson misreads *Luker* and, in the alternative, that *Luker* must be distinguished from the present case because in *Luker*, the plaintiff had not brought his civil rights claims in the earlier state court lawsuit. While it is true that the *Luker* plaintiff had not included his civil rights claims in the earlier state court lawsuit, that fact is totally irrelevant under traditional res judicata principles. As long as the *Luker* plaintiff could have brought his civil rights claims at the same time as his state law claims in the state suit, he would be barred from trying to bring those claims later under the doctrine of claim preclusion. As we noted earlier, claim preclusion applies to bar not only those claims actually brought in the earlier suit, but all claims that could have been brought. Therefore, the mere fact that the *Luker* plaintiff had not brought his civil rights claims in the earlier state court action would be irrelevant. Thus, the only way the *Luker* court could allow the *Luker* plaintiff to proceed with his civil rights claims in a latter suit, was for the court to decide that the earlier state court judgment was not a final judgment on the merits.

■ Therefore, defendants are left only with the argument that Johnson misapplies the *Luker* case to the present situation. We disagree. *Luker* is clearly on point. The *Luker* court interpreted the state court's dismissal for failure to provide notice under ¶ 8–102 as a dismissal for lack of jurisdiction. *Luker*, 341 F.Supp. at 115. We would be reluctant to also so characterize the state court order, but the Seventh Circuit has indicated that *Luker* was correct and that a dismissal under ¶ 8–102 is merely jurisdictional in nature and not a final judgment under Illinois Supreme Court Rule 273. *Harl v. City of LaSalle*, 679 F.2d 123, 126 n. 5 (7th Cir.1982). *But see Harl v. City of LaSalle*, 679 F.2d 123, 130 (7th Cir.1982) (Pell, J., dissenting). Therefore, we find that *Luker* is applicable to the present case, and that pursuant thereto, Johnson is not prevented from bringing this present lawsuit under the federal civil rights statutes.

**B. Does Johnson's § 1983 Claim Against the City Comply with Monell?**

■ The City contends that we must dismiss Johnson's claim against the City under *Monell v. New York City Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Under *Monell*, Johnson cannot recover against the City under § 1983 on a theory of respondeat superior. Rather, plaintiffs must plead and prove that municipal "policy or custom" caused the alleged constitutional injury. *Monell* at 658, 98 S.Ct. at 2037–38. "There must be an 'affirmative link' between the alleged municipal policy or custom and the alleged wrong. That is, the municipal policy must be 'the moving force of the constitutional violation'" *Little v. City of Chicago*, No. 86–1107, slip op. at 4 (N.D.Ill. May 22, 1986) [Available on WESTLAW, DCT database] (citations omitted). In order to survive a motion to dismiss, plaintiffs must plead some fact or facts tending to support the allegation of municipal policy; generally, they cannot allege the facts surrounding their own case and tack on a bare policy allegation. *Strauss v. City of Chicago*, 760 F.2d 765, 769 (7th Cir.1985). "A complaint that tracks *Monell*'s requirement of official policy with bare allegations cannot stand when the policy identified is nothing more

495 N.E.2d 1186 (1st Dist.1986). Thus, but for state court judge's clearly improper ruling dismissing Johnson's entire lawsuit, including Johnson's claims under the federal civil rights statutes because of the statutory notice problem, this case would not be before us today. However, the propriety of the substantive ruling in the Will County suit is not properly before us

because under Illinois law claim preclusion applies without regard to whether the prior adjudication is correct or erroneous. *Bond v. Dunmire*, 129 Ill.App.3d 796, 800, 84 Ill.Dec. 862, 866, 473 N.E.2d 78, 82 (4th Dist.1984). Johnson's attorney should have filed an appeal to the Will County order and cannot now relitigate that issue.

than acquiescence in prior misconduct." *Id.* at 767. Had Johnson done no more than describe his beating at the hands of the defendants and then added the boilerplate language of *Monell*, we would agree with the City that *Strauss* would be on point and require dismissal of the City. However, the complaint contains facts regarding the alleged policy of the City which satisfies *Strauss* and enables Johnson to precede against the City beyond the pleading stage.

■ The complaint alleges three facts which we find get Johnson beyond the *Strauss* barrier. Essentially, although he does not so artfully phrase his claim, Johnson is alleging that by a pattern of knowing and deliberate indifference to its officers' use of excessive force to arrest suspected criminals, the City has fostered the use of excessive force by the officers. Such an allegation is sufficient to state a claim under § 1983. *Fiacco v. City of Rensselaer, N.Y.*, 783 F.2d 319, 326–27 (2d Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 1384, 94 L.Ed.2d 698 (1987). Johnson alleges that for a long time prior to an incident in which a black person was "slain" by a City police officer, the Joliet Police Department and the City would not prosecute citizens' complaints of police brutality before the Police Board of Commissioners. In *Fiacco*, the plaintiff alleged the City defendant "was knowingly and deliberately indifferent to the possibility that its police officers were wont to use excessive force and that this indifference was demonstrated by the failure of the City defendants to exercise reasonable care in investigating claims of police brutality in order to supervise the officers in the proper use of force." *Fiacco*, 783 F.2d at 327. Additionally, in *Hossman v. Blunk*, 784 F.2d 793, 795 (7th Cir.1986), the Seventh Circuit upheld a pro se complaint that adequately alleged a claim under § 1983 where the plaintiff, as part of his allegations, alleged that he had informed the jail commander about the prisoner abuse and that he had filed twenty to thirty grievances with the sheriff, who knew or should have known of the "get tough" policies and practices of the prison. He further alleged that the sheriff had the power and duty to correct abuses but did not.

Johnson also alleges that the City maintained a training center where the City actually "taught the use of excessive force in the arrest and detention of prisoners ..." and that the City encouraged the use of "blackjacks and numchucks by police officers in arrests and detention." While teaching the use of black-jacks and numchucks may not as a matter of law constitute the encouragement of the use of excessive force, it may well be evidence of such encouragement.

■ We find that the allegations of Johnson's complaint on the whole, satisfy *Strauss* as to a policy of knowing and deliberate indifference to the City's police officers' use of excessive force. We do not, however, find that Johnson has stated a claim under § 1983 for a policy of knowing and deliberate indifference as to the use of excessive force against blacks in particular. The only allegation Johnson makes which is race specific is the slaying of a black, Ronald Sherrod, by a Joliet police officer. However, Johnson does not give us sufficient facts that would indicate the circumstances surrounding Sherrod's death. Without such facts, we cannot see how it demonstrates a policy of excessive force against blacks. Johnson has not alleged that the City only ignored the complaints of black citizens of police brutality, or that the training center taught the officers to use excessive force against only black citizens. Accordingly, we grant the city's motion to dismiss to the limited extent that Johnson's complaint alleges, without sufficient facts, that the City encouraged the use of excessive force against black citizens.

## II. *Motion for Rule 11 Sanctions*

Defendants also move this Court to assess sanctions against Johnson and his attorney Donald Murphy under Fed.R.Civ.P. 11 for filing a complaint which "by no means has any basis or is warranted by existing law." Obviously, we disagree as

noted above. Therefore, we deny the motion for sanctions.

In conclusion, we deny defendants Panizzo, Boucher, Siminski and Brace's motion to dismiss on the basis of claim preclusion or res judicata because the original Will County lawsuit does not include a claim against the City of Joliet for respondeat superior liability for the acts of these four defendants. Additionally, we find that the Will County lawsuit does not preclude the present lawsuit because it was a dismissal for lack of jurisdiction. We deny defendant City's motion to dismiss the § 1983 claim against it because Johnson has sufficiently alleged a policy of knowing and deliberate indifference to the use of excessive force by the City of Joliet's police force. Finally, we deny defendants' motion for sanctions under Fed.R.Civ.P. 11. It is so ordered.